32970.  HURT & QUINN INC. *v.* NATIONAL SURETY CORP.

DECIDED MAY 2, 1950.  REHEARING DENIED JUNE 7, 1950.

686

*MacDougald, Troutman, Sams & Schroder, Dan MacDougald Jr.,* for plaintiff.

*Harry S. McCowen,* for defendant.

*Powell, Goldstein, Frazer & Murphy,* amicus curiæ.

TOWNSEND, J. (After stating the foregoing facts.) While numerous questions are raised in the brief of the plaintiff's counsel, the first consideration must be whether the petition, as amended, sets out a cause of action under the terms of

the bond upon which suit was brought. This bond agrees to indemnify the plaintiff for losses of money or other personal property only "when caused by larceny, embezzlement, forgery, misappropriation, wrongful abstraction, or any other fraudulent or dishonest act or acts committed by any of the Insured's employees while covered under this bond." It is admitted that the plaintiff or its insurance companies lost the sum $199,640.33 through the acts of its employee, Whitner & Company. We do not in this opinion determine the question of whether the plaintiff has stated facts sufficient to show a personal loss rather than a loss by the insurance companies for which it acted as general agent, but assume for the purpose of argument that the plaintiff would have had a right to bring this action if the terms of the indemnity contract had otherwise been met. First, the relation of employer and employee must exist and the loss must be shown. This is admitted. Then, the loss must be due to the larceny, misappropriation or other fraudulent or dishonest act of the employee as set out in the bond. It is obvious from the allegations of the petition that the local agent was incurring an ever-increasing amount of short-term debts on the premiums it paid the plaintiff, and long-term credits on the money due it from individual policyholders. Under such circumstances, if anything occurs which interrupts the momentum of expansion on the part of the obligee, the local agent here, it commonly results in immediate financial distress. This fact bears upon the question of intent, because, without a dishonest intent on the part of the local agent to convert the sums represented by the refunds on canceled policies to its own use in fraud of the plaintiff, no act has been alleged under which a recovery on this bond is possible. See in this regard Coconut Grove Exchange Bank v. Columbia Casualty Co., 154 Fed. 2d, 542. There must be a conversion to the use of the employee with an intent to injure or defraud. Louis Pizitz Dry Goods Co. v. Fidelity & Deposit Co. of Maryland, 223 Ala. 385 (136 So. 800). And, while the words "dishonest act" are broad enough to cover many defalcations for which indictment and conviction might not be had, and while a presumption of dishonesty or conversion may arise from all the facts alleged; nevertheless, in the present instance, the petition shows that when the plaintiff and its insurance

companies first learned of the deficit in June, 1943, they did not consider that any fraud or criminal intent was involved on the part of the local agent. On the other hand, they left the local agent in charge of the business, and, while curtailing the writing of certain types of insurance, entered into a trustee agreement under which operations were continued by Whitner and Company until the latter part of 1947. "The companies represented by Whitner believed that a closer supervision of the management would likely produce results if the agency was given a chance to work itself out." The fact that in June, 1943 "no one realized the seriousness of the situation, which did not develop until the first part of December, 1943," indicates that from December, 1943, when the plaintiff first realized the entire situation, through most of 1947, it continued to treat the deficit as a result of poor management, and perhaps over-expansion or bad business judgment, on the part of the local agent, but was of the opinion that by lending its aid through the trustee agreement it could put Whitner & Company back on a sound business footing. This does not indicate any apperception on the part of anyone concerned that fraud or dishonesty existed at that time, nor are any facts alleged to have been discovered subsequently to cause a different opinion. On the contrary, the only allegation in the petition connected with this deficit is that Whitner & Company "failed and neglected" to pay the sums indicated over to the First National Bank, although they retained sufficient sums therefor. In *Massachusetts Bonding &c. Co.* v. *Raskin,* 43 *Ga. App.* 582 (159 S. E. 778), a petition for recovery of sums withheld by an employee under a somewhat similar bond was held to be insufficient where the plaintiff alleged only that the employee "failed and refused" to pay over the sum sued for. The court there stated that the offenses mentioned in the bond involve moral turpitude, that dishonesty carries with it the idea of a wilful wrong, and that the pleader studiously avoided averring any wilful wrongful conduct on the part of the employee. The petition in the instant case likewise avoids any allegation which might rebut the presumption raised by the subsequent course of conduct between the parties alleged therein that the failure of the employee to pay over the sums due by the plaintiff's insurance companies to the bank is equally consonant with

mere negligence, and inability to pay due to other causes, as it is with fraud and dishonesty.

■ While the terms of the master policy are not set out in the petition, the course of dealing between the local agent and the plaintiff is fully described. The local agent assumed a personal liability for the payment of premiums on the policies it issued under this master policy. It paid for them, not with funds collected from individuals insured, but with its own funds, which it borrowed from the bank on its own credit. Had it been unable to collect from individuals insured, it had the right to cancel the policies, but this would not effect its personal liability to the plaintiff until the time of such cancellation. The funds in question, then, are not funds entrusted to the local agent by individuals insured for the use of the plaintiff, but rather funds representing a debt owing directly from the local agent to the plaintiff under the terms of the master policy. The plaintiff recognized this and stated in a letter to the defendant that it intended "to trustee that portion *of their indebtedness* which is in arrears and it is expected that within a reasonable time the *past due indebtedness* will be paid off." (Emphasis ours.) The fact that the plaintiff directed its employee to pay a part of the money owed directly to it, and to pay the balance directly to the bank to cancel out an indebtedness on the part of the plaintiff to the bank, does not change the character of the transaction, the money still being a debt owing by the employee to the plaintiff rather than money entrusted by the plaintiff to the employee for a particular purpose. A mere indebtedness of the local agent to the plaintiff is not a defalcation which authorizes recovery under the terms of the bond, and "a mere debtor does not embezzle the money of his creditor by failing to pay the debt when due." Milwaukee Theatre Co. *v.* Fidelity & Co., 92 Wis. 412 (66 N.W. 360); 16 A.L.R. 1500. The proof of a balance due to the employer from the employee is not sufficient for a recovery under a fidelity bond indemnifying the obligee against loss by the larceny or embezzlement of the employee. Williams *v.* United States Fidelity &c. Co., 105 Md. 490 (66 Atl. 495). The allegations in the instant case, consequently, amount to no more than the non-payment of an indebtedness owing by the employee to the plaintiff, which the

plaintiff had directed be paid to a third party rather than directly to itself, and are insufficient to set up a defalcation under the terms of the bond.

The trial judge did not err in sustaining the demurrers to the petition as amended and in dismissing the same.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*