33707. HURT & QUIN INC. *v.* ST. MALYON.

Decided November 9, 1951.  Rehearing denied December 12, 1951.

168

*MacDougald, Troutman, Sams & Schroder, Dan MacDougald Jr.,* for plaintiff.

*Powell, Goldstein, Frazer & Murphy, Elliott Goldstein,* for defendant.

SUTTON, C. J. 1. In determining on demurrer whether the alleged loss to the insured plaintiff was covered by the fidelity bond sued upon, two questions arise: first, whether the loss was a direct loss of money "belonging to the insured or for which the insured is legally liable," or was of "premiums, . . collected and retained by the employee," according to clause (e) of the rider attached to the National Surety Corporation's bond referred to; and second, whether the loss is alleged to have been caused by reason of the dishonesty of the employee or by larceny, embezzlement, forgery, misappropriation, wrongful abstraction or any other fraudulent or dishonest act or acts. In the case of *Hurt & Quin Inc.* v. *National Surety Corp.,* 81 *Ga. App.* 683 (59 S. E. 2d, 722), supra, it was held that the petition showed that the loss was of money belonging to Whitner & Company, which

it had borrowed from the bank on its own credit, and that Whitner & Company was only indebted to the plaintiff in the amount of the loss alleged; and, on the second question, that the alleged failure and neglect of Whitner & Company to pay this debt did not amount to a defalcation under the terms of the National Surety Corporation's fidelity bond. In that case, it was not alleged that the money borrowed from the bank by Whitner & Company to pay the annual premiums in question was paid to Whitner & Company as agent, and under the allegations of the petition in that case, it was held that the money obtained from the bank on the loans referred to belonged to Whitner & Company. This case differs, however, in that here it is alleged in substance that the plaintiffs were the general agents of the insurance companies with authority vested in them to appoint local agents for the insurance companies, and that pursuant to this authority the plaintiffs appointed Whitner & Company as such local agent. Also, this relationship is further borne out by Exhibit NN attached to the petition here, whereas this agreement is not contained in the record in the *National Surety Corporation* case, supra. Therefore, construing these allegations together with the copy of the master policy, it appears that the plaintiff, Hurt & Quin Inc., and its insurance companies had a definite interest in the money which was borrowed from the bank to pay the premiums and disbursed to Whitner & Company *as agent* by the bank. Accordingly, while the allegations of the petition in the *National Surety Corporation* case, supra, demanded a conclusion that Whitner & Company were acting independently in their negotiations with the bank, here by reason of the allegations in the petition and its exhibits showing the relationship of agency on their part, it appears that Whitner & Company received the money from the bank as agent of the insurance companies; that the money belonged to the insurance companies, and that the plaintiff herein became liable for its loss. While Georgia Fire Insurance Service Inc. and Whitner & Company are alleged to have signed the notes given for the money as maker and endorser, respectively, it could hardly be said that they borrowed solely on their own credit, for, by the terms of the master policy, the bank could at any time request and obtain from the insurance companies the amount of unearned

premiums on all policies in force and assigned to the bank, regardless of whether the full premiums loaned thereon to Whitner & Company had been paid to the insurance companies. The insurance companies were obligated to the bank for the unearned premiums on the policies written by Whitner & Company, and the master policy shows that the insurance companies' unqualified promise to pay the unearned premiums to the bank on demand was given for the bank's "disbursing the amount of such loan to this [insurance] company's agent, Whitner & Company." Since Whitner & Company received the money from the bank as the agent of the insurance companies, the money belonged to the insurance companies, and the fact that the agent was also personally liable therefor to the bank makes it none the less the principal's money, as between the principal and the agent, and as between the plaintiff and the defendant insurer of the agent's fidelity.

Considering the alleged transactions as a whole, including the allegations of agency contained in this petition but which were omitted from the petition in *Hurt & Quin Inc.* v. *National Surety Corp.*, supra, it may be seen that the moneys in Whitner & Company's hands were premiums belonging to the insurance companies just as much as if they were the actual moneys collected from the individuals insured. The premiums were collected in small amounts weekly from the many individuals insured and were paid to the bank. The bank had previously advanced the full annual premium, on each policy issued, to Whitner & Company as agent, thereby financing the tranactions. Whitner & Company remitted the funds received from the bank, less commissions, to the plaintiff, and the plaintiff in turn sent the money to the insurance companies. There was also a flow of the unearned premiums in the opposite direction. As individual policies were canceled, presumably for non-payment by the individuals insured of their weekly instalments on the full premium, so that no further amounts were coming to the bank through the local agent in payment of the full premium advanced by the bank, then the bank was to receive so much of the full premium advanced as had not been earned by the insurance companies. This reverse flow of funds was accomplished by directing Whitner & Company to turn a portion of the premiums

borrowed from the bank back to the bank, instead of sending the funds to the plaintiff and the insurance companies. What the parties did indirectly in the financing plan is the same in effect as what they might have done directly: to collect premiums in full from the individuals insured and transmit them to the insurance companies; and the funds in either instance are premiums belonging to the insurance companies, not to the agent who transmits them.

It is alleged that, under the general agency contracts which the plaintiff, Hurt & Quin Inc., had with the fire insurance companies, the plaintiff was bound to account for and pay over the premiums due the respective companies. So, it seems that the alleged loss was of money belonging to the plaintiff or for which the plaintiff was liable, and was not merely an indebtedness of the local agent, Whitner & Company, to the plaintiff.

2. As to whether the loss was caused by the dishonesty of Whitner & Company, the petition alleges that Whitner & Company "diverted" the premium funds, and that the shortage was later discovered by an audit; whereas in *Hurt & Quin Inc.* v. *National Surety Corp.*, supra, the allegation was that Whitner & Company "failed and neglected" to pay over the funds. In the case of *Massachusetts Bonding &c. Co.* v. *Raskin*, 43 *Ga. App.* 582 (159 S. E. 778), the contract covered losses arising "by any act or acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction or wilful misapplication on the part of the employee," and it was there said, "The offenses mentioned involve moral turpitude. Dishonesty certainly carries with it the idea of a wilful wrong, and, in our opinion, the same is true of 'wrongful abstraction' and 'wilful misapplication.' In short, any act or conduct which makes the company liable under the contract connotes wilful wrong, and not merely an innocent mistake, or negligence." In that case it was alleged that the loss "arose by reason of the failure of the said Rosenthal to return to petitioners monies, goods, and merchandise *sold or withdrawn* by him from the stock while it was in his possession, custody, and control." [Emphasis added.] The court there held that no wilful, wrongful conduct on the part of the employee was alleged, and that the alternative allegation in the petition as quoted above was insufficient to state a cause of action. But

we think the purport of that ruling is that an allegation that the loss was caused by the failure of the employee to return goods *withdrawn* by him would have set out a cause of action on the bond sued on.

The bond in the present case is substantially similar to the bond in *Massachusetts Bonding &c. Co.* v. *Raskin,* supra. The Lloyd's excess bond covered loss by reason of the dishonesty of the plaintiff's employees, and by reference incorporated the indemnity clause of the National Surety Corporation's primary bond, insofar as not in conflict therewith, covering losses caused by larceny, embezzlement, forgery, misappropriation, wrongful abstraction or any other fraudulent or dishonest acts of the insured's employees. To allege a loss under the terms of the bond, it must appear that the employee or local agent caused the loss by his own wilful wrong, rather than by an innocent mistake or negligence.

The allegation that Whitner & Company "diverted" the premium remittances which it had received from the bank shows that Whitner & Company intentionally turned the flow of the plaintiff's money into other channels from that of its proper transmission to the plaintiff or to the bank as directed by the plaintiff. Such conduct by an agent under the facts as here alleged indicates a wilful wrong in the nature of a misappropriation. In the *National Surety Corporation* case, supra, it was alleged that Whitner & Company "failed and neglected to pay over such sums," which was equally consonant with mere negligence and inability to pay due to other causes, as it was with fraud and dishonesty. In the present case it is alleged that Whitner & Company "diverted" the money, causing the loss complained of. The difference between the two allegations is that the latter connotes a wilful act, which, when done by an agent in handling his principal's money, amounts to a wilful wrong or a fraudulent or dishonest act, and such act as here alleged would come within the terms and coverage of the fidelity bond sued on in this case. Therefore, the petition set out a cause of action, and the trial judge erred in sustaining the general demurrers of the defendant thereto.

Pursuant to the act of 1945 (Ga. L. 1945, p. 232, Code, Ann.

Supp., § 24-3501), this case was considered and passed upon by the court as a whole.

*Judgment reversed. MacIntyre, P. J., Gardner, Townsend and Worrill, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. It is my opinion that the ruling in the second division of the opinion in *Hurt & Quin Inc.* v. *National Surety Corp.,* 81 *Ga. App.* 683, is decisive of the issue in this case and until reversed should control this case. The majority opinion bases its rulings on two so-called distinctions between the two cases; the first, that in this case it is alleged that Whitner & Company "diverted" the funds, whereas in the above case it was alleged that it "failed and neglected" to pay over the funds. I concede that the instant case differs from the former case in this respect but in the *National Surety* case, in view of the ruling in the second division of the opinion, it would have been immaterial whether it was alleged that Whitner & Company diverted the funds, failed or neglected to pay them over or embezzled them, because one cannot embezzle his own money. Since the court in that case held that the money belonged to Whitner & Company, the allegations as to what it did with respect to them added nothing to the statement of the cause of action. The second distinction between the two cases, as relied on by the majority opinion, is that it is alleged in the instant case that the borrowed funds were to be disbursed by the bank and were disbursed directly to Whitner & Company as local agent of Hurt & Quin. I think the petition and exhibits in the *National Surety* case showed the fact that the money borrowed was to be paid by the bank to Whitner & Company as local agent of Hurt & Quin. There was a rider in the *National Surety* case, attached to the master policy, providing that "it will not be necessary, however, for said bank to wait until said list has been furnished to this company or acknowledged by this company before disbursing the amount of such loan to this Company's agent, Whitner & Company." The allegations of both petitions alike show that the bank was to disburse the borrowed money to Whitner & Company, and show that Whitner & Company was designated as agent of Hurt & Quin, but such designation as agent was not done for the purpose, nor did it have the effect, of rendering the borrowed funds

the property of Hurt & Quin. The parties had long and complicated agreements and it was necessary to state the capacity in which each was acting so that the ultimate rights of all could be ascertaind as between any two or more. The statement in the above-referred-to rider, as well as the Exhibit NN, attached to the instant petition, as well as some of the other exhibits, show on their face that the references to payments to "Whitner & Company as agents" were descriptio personae and had no other meaning. Certainly they show that the borrowed money did not belong to Hurt & Quin or to any insurance company. Thus the allegation that such was true, if it should be so interpreted, falls when the exhibits destroy it. To clearly illustrate that the term "agent" used in the exhibits, is purely descriptio personae, let us take the Exhibit NN, present in the instant case and lacking in the *National Surety* case. This was the agreement between the First National Bank, Georgia Fire Insurance Service Inc., Florida Life Insurance Service Inc., and Whitner & Company. The first paragraph of the agreement provided how each party would be referred to in the agreement. For instance, the Georgia Fire Insurance Service Inc. was to be called "Borrower"; the bank was to be called "Bank"; Whitner & Company was to be called "Agent." It follows that when this agreement, Exhibit NN, provides that "said bank is authorized and directed to disburse the net proceeds of said loan to said agent," it simply meant that the bank was authorized to disburse the proceeds to Whitner & Company, and it did not mean that the parties agreed that the money belonged to anyone but Whitner & Company. The obvious purpose of this specific provision was to authorize the bank to pay the money directly to an *indorser* on the note given for the loan instead of to the borrower, or principal, Georgia Fire Insurance Service Inc. Insofar as averring that the moneys allegedly diverted belonged to anyone other than Whitner & Company, as far as the allegations of agency are concerned in their receipt from the bank, the allegations in the two cases are substantially the same. Now I come to that part of the ruling in the *National Surety* case which I think controls this case under practically identical allegations. It is substantially alleged in each case that Whitner & Company retained from premium remittances sufficient sums

to pay the bank to cover unearned premiums. If there is anything in either case to produce liability on the bond, it is the fact that when Whitner & Company retained the unearned premium money to pay to the bank, instead of remitting it to its general agent or insurance company, it held the sums, so withheld, in trust for its owners and the bank, and a diversion of such sums would be covered by the bond. However, this court has held in the *National Surety* case that under these allegations the money belonged to Whitner & Company and it was only indebted to Hurt & Quin and the insurance company. It is my opinion that before we can now reverse this case, we will first of necessity have to overrule the *National Surety* case. Until this is done, we are bound to follow the ruling in that case to which I have referred.