71778. CARR et al. v. NODVIN.
71779. CONCEPT INVESTMENTS, INC. v. NODVIN.
(342 SE2d 698)

BIRDSONG, Presiding Judge.

This appeal evolves from self-described "long and tortured litigation which has been made more complicated than necessary by the legal maneuvering exhibited below." The subject of the suit is a conveyance made in October 1972, of a parcel of real property located in Douglas County by Marvin P. Nodvin to Concept Investments, Inc. on a note and deed to secure debt. In an effort to syndicate the property, Concept, through its representatives, solicited investors to purchase undivided interests therein. At the time these interests were being sold, Nodvin was an officer, director and shareholder of Concept, and was also its attorney and escrow agent. Nodvin prepared an

offering circular to be provided to potential investors on behalf of Concept which stated that the property was to be sold "subject to" an existing mortgage. Concept's president, Richard R. Carta, instructed Concept's sales representatives to tell potential investors that the purchase of an undivided interest in the property would not create an assumption of existing indebtedness against the property and therefore would not subject them to personal liability for such indebtedness, and the investors were so advised. However, Nodvin prepared sales contracts, which were executed by Carta as president of Concept and the investors providing for payment over a ten-year period, with the purchase price to be paid "cash at closing, together with a note for the balance and the assumption of purchaser's proportionate share of the wraparound deed to secure debt on the property. . . ."

The sales contracts further stated that they constituted the sole and entire agreement between the parties thereto, that no modification would be binding unless signed by all parties to it, and that no representations, promises or inducements not included therein would be binding on any party. Nodvin also prepared warranty deeds to the investors which contained language that they were given subject to a described recorded deed to secure debt, "the debt secured thereby and contained therein being specifically assumed by Grantee." The notes and deeds further stated that installments not paid when due would bear interest at the rate of 10% per annum.

In December 1973, Nodvin and Concept entered into a "modification agreement" regarding payment of the October 20, 1972 note and deed to secure debt to which none of the subsequent purchasers were parties. Another agreement between Nodvin and Concept, Carta, and McClintock, referred to individually and collectively as the "Concept Group," was drafted by counsel retained by Carta and McClintock and signed by the parties severing Nodvin's relationship with Concept. On December 6, 1976, Nodvin and Concept entered into another "modification agreement" of the note and deed to secure debt reciting that "the present co-tenants" were parties thereto, although it was not executed by all of the subsequent purchasers. In January 1977, when the counterpart executions to the 1976 modification agreement still had not been signed by all the subsequent purchasers, Nodvin wrote McClintock that the modification would become effective only when the executed counterparts were completed, which never occurred. Between October 1976 and September 1977, four "co-tenants" conveyed their respective interests in the property back to Concept. No ad valorem taxes were paid on the property except by the transferee of fi. fas. for such taxes.

On October 7, 1983, Nodvin filed suit against Concept, Carta, McClintock and the subsequent purchasers or "co-tenants," seeking payment of past due installments on the note and deed to secure debt

given him by Concept and assumed by the investors plus past and future interest until payment, indemnification under the modification agreements, and payment of taxes and damages for conspiratorial fraud and slander of title. Answers raising numerous defenses, including mutual mistake, fraud and estoppel were filed by the defendants, as well as cross-claims against Concept and counterclaims against Nodvin alleging violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO) and common law fraud. The investors further counterclaimed and cross-claimed that due to mutual mistake the deeds and other documents should be reformed, rescinded or voided. After prodigious discovery efforts and massive filing of motions, a hearing was held on May 10, 1985, culminating in the issuance of some 25 orders relating to the grant of Nodvin's motions for summary judgment and the denial of appellants' motions, all of which are contested in these appeals. (The index to the record alone consists of 28 pages.) In addition, Nodvin has filed motions to dismiss Concept's appeal and for damages for frivolous appeal. *Held*:

1. In the first orders issued by the trial court ensuing from discovery matters, the trial court struck the answers, defenses and counterclaims of four appellant subsequent purchasers, ordered them to provide supplemental responses to discovery and then granted summary judgment against them. Summary judgment was also entered against three other investors whose pleadings were not stricken, two of whom appeal.

While the orders appealed from recite that four appellants were in default because their pleadings were struck, the transcript of the motions hearing reveals that the trial judge nevertheless decided to give each defendant "an opportunity to have [his] contentions heard, and considered, and ruled on," and that he gave them additional time to respond to interrogatories and file motions and affidavits. The judge further stated that he was "not going to punish" counsel for failure to file and that he wanted "all the documents that are relevant to the case before me so I can consider them." Thus appellants have not shown that Nodvin's motions for summary judgment were granted based upon improper imposition of sanctions. In fact, they concede in their brief before this court that since the court also granted summary judgment against some defendants whose pleadings were not struck, it must be assumed that summary judgment was entered against all defendants on the merits. We find no grounds for reversal in the enumerations of error involving the purportedly erroneous imposition of sanctions.

2. We agree, however, with appellants Moore, Nisewonger, Siegel and Carr (four of the subsequent purchasers) that the trial court erroneously allowed Nodvin to withdraw admissions made by his failure

timely to respond to their request therefor on the day that it granted Nodvin's motions for summary judgment as to these appellants. OCGA § 9-11-36 (b) "and judicial interpretations thereof require the movant in a motion to withdraw admissions . . . to show that 'the presentation of the merits of the action will be subserved' by the allowance of the motion. [Cit.] . . . If the movant successfully makes such a showing, it is up to the respondent . . . 'to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.' [Cits.] . . . Inasmuch as no hearing was held on [Nodvin's] motion to withdraw admissions, no evidence as to whether the merits of the action will be subserved by allowing the withdrawal and whether a withdrawal will prejudice [appellants] in maintaining [their claims] was presented for the trial court's consideration. . . . The Supreme Court's holding in *Cielock v. Munn,* [244 Ga. 810 (262 SE2d 114)] requires a reversal of this case and a remand to the trial court for the presentation and consideration of evidence pertinent to [Nodvin's] motion to withdraw admissions. [Cit.]" *Hanson v. Farmer,* 163 Ga. App. 561, 562 (1) (295 SE2d 343). The trial court did not afford appellants an opportunity to present any evidence before the admissions were withdrawn and prior to ruling on Nodvin's summary judgment motions, and they were entitled to rely upon those admissions until that time without submitting further evidence. *Albitus v. Farmers &c. Bank,* 159 Ga. App. 406 (1) (283 SE2d 632). Accord *Clements v. Toombs County Hosp. Auth.,* 175 Ga. App. 651 (1) (334 SE2d 188).

3. In conjunction with the December 1973 agreement severing Nodvin's relationship with Concept and purporting to modify the terms of the original transaction, an indemnity agreement between Nodvin and the Concept Group, Carta and McClintock, individually and collectively, was executed. Under that agreement, as drawn by Concept's attorney, Nodvin resigned as an officer, director, attorney and escrow agent of Concept and sold all his shares of stock to it under specified terms for valuable consideration, in return for which he and Concept agreed to "release and forever discharge each other from any and all claims, causes of action, demands, rights, obligations and responsibilities of whatever nature which either Nodvin or the Concept Group has or may have by reason of . . . (a) Nodvin's ownership of shares of stock in Concept Investments, Inc., at any time; (b) Nodvin being and serving as an officer and/or director of Concept Investments, Inc., at any time; (c) Nodvin being and serving as attorney and counselor at law and in fact for the Concept Group; and (d) Nodvin being and serving as Escrow Agent under any agreement to which the Concept Group or any client or investor of Concept Investments, Inc. is a party. . . . The Concept Group shall indemnify and hold Nodvin harmless from any and all claims, causes of action, de-

mands, judgments, expenses of litigation and costs arising or occurring by reason of Nodvin being and serving as an officer, director, and stockholder of Concept Investments, Inc. at any time from any person whatsoever, natural or artificial."

In support of his motions for summary judgment, Nodvin filed affidavits stating that in 1973 he discovered that Carta and McClintock were engaging in certain unlawful activities and were seeking to defraud him of his stock interest in Concept; that after entering into agreements with the subsequent purchasers of the Douglas County property, Concept and the subsequent purchasers failed to pay taxes on the property in a scheme to defeat his claim; that by virtue of the failure to pay taxes, liens had been placed on the property adversely affecting his title thereto; that Concept and the subsequent purchasers jointly and severally owed him specified sums in principal and interest thereon plus attorney fees; that he never acted as attorney at law or represented Carta, McClintock or any of the subsequent purchasers, nor had he sold or aided Concept or any of its salesmen in the sale of any interest in the property to any subsequent purchaser; and that he had never engaged in racketeering activities, violated the Securities Act, nor defrauded any of the named defendants.

Nodvin's attorney filed an affidavit in which he swore that he had been employed by Nodvin to represent him in his claims against Carta, McClintock, Concept and other corporations controlled by them; that in connection with that representation he prepared a complaint alleging various fraudulent activities of Concept, Carta and McClintock, and others, and their affiliated corporations; that prior to the filing of the complaint he met with the attorney representing Carta, McClintock and Concept, which resulted in negotiating a settlement; and that after substantial negotiations, their attorney prepared an agreement which he advised Nodvin to accept and it was executed on December 17, 1973. Neither McClintock nor Concept filed any affidavit in response to Nodvin's motions for summary judgment based upon this agreement and the above affidavits, and none of the above facts were denied in any affidavit filed by any appellants in opposition to Nodvin's motions for summary judgment.

" 'Forbearance to prosecute a legal claim and the compromise of a doubtful right are both sufficient considerations to support a contract.' [Cits.]" *Pitts Truck Air v. Mack Trucks,* 173 Ga. App. 801, 803 (3) (328 SE2d 416). Moreover, by the enactment of OCGA § 51-12-32 (c) (formerly Code Ann. § 20-1206), "the Legislature has expressly permitted a party to compromise or settle a claim in lieu of a lawsuit or judgment against that party without prejudicing that party's right to seek indemnity from another." *Ranger Constr. Co. v. Robertshaw Controls Co.,* 158 Ga. App. 179, 181-182 (279 SE2d 477). A contract of indemnity "is an original rather than a collateral undertaking and

generally undertakes to make good the promisee's loss resulting from his liability to another. . . . [Cit.] [Cit.]" *Parker v. Puckett*, 129 Ga. App. 265, 268 (199 SE2d 343); see also *Thomasson v. Pineco, Inc.*, 173 Ga. App. 794 (328 SE2d 410). "[W]hen the party seeking to indemnify itself or absolve itself from the consequences of its own negligence does so in unequivocal terms, the contract terms will be given effect. . . ." *Seaboard Coast Line R. Co. v. Dockery*, 135 Ga. App. 540, 545 (218 SE2d 263). See *U.S.A., Inc. v. Kirkland*, 142 Ga. App. 484 (236 SE2d 130).

We agree with Nodvin that his contract of indemnity with Concept is valid and binding, but not that it relieves him from liability as against the subsequent purchasers for any wrongful acts he may have committed. Rather, it is only "when a person has become liable with another for harm caused to a third person . . . which was created by the misconduct of the other or which as between the two, it is the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability. . . ." *Georgia Ports Auth. v. Central of Ga. R. Co.*, 135 Ga. App. 859, 862 (219 SE2d 467). Since there are claims against Nodvin presently pending trial and no funds have been expended by him relating to these claims so as to accrue a right of indemnity against Concept, he has not incurred any "actual legal liability" in order to assert a claim for indemnity at this point in the litigation. *Ranger Constr. Co. v. Robertshaw Controls Co.*, 158 Ga. App. 179, 182, supra. Accordingly, Nodvin's motions for summary judgment cannot be sustained on the basis of the indemnity agreement. See *Seaboard Coast Line R. Co. v. Mobil Chemical Co.*, 172 Ga. App. 543 (3) (323 SE2d 849).

4. Each subsequent purchaser received a warranty deed from Concept containing the assumption of the debt clause. "When a grantee accepts a deed, he is bound by the covenants contained therein even though the deed has not been signed by him." OCGA § 44-5-39. "[A] remote grantee who takes mortgaged real property by a deed in which he agrees to pay the debt is personally liable to the mortgagee even though his grantor or a predecessor in title took only subject to the debt and was not personally liable for that debt." *Somers v. Avant*, 244 Ga. 460, 463-464 (261 SE2d 334). These appellants did not assert that they were unable to read or were prevented from reading the assumption language, and Nodvin's affidavit that he did not represent the subsequent purchasers either in the sale of any interest in the subject property or as an attorney was undisputed. " '(I)n the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud. [Cit.]' [Cit.]" *Foremost Ins. Co. v. Southeast Recovery*, 175 Ga. App. 794, 796 (3) (334 SE2d 375). Thus, they were not

entitled to summary judgment on this issue.

We conclude, however, that genuine issues of material fact sufficient for trial were presented. Appellants' counterclaims included allegations of securities fraud by Nodvin in his acts as attorney for Concept during the transactions in issue, and Nodvin offered no evidence to refute or pierce their contentions that there was an equitable tolling of the statute of limitation applicable to actions brought pursuant to 15 USC § 771 (2). See *Ingenito v. Bermec Corp.*, 441 FSupp. 525 (S.D.N.Y. 1977). Nodvin also failed to respond to their contentions that he was not entitled to a judgment for unpaid ad valorem taxes, and since appellants disputed the establishment of the debt, Nodvin likewise did not establish a prima facie case of the amount of principal and interest owed. *Garrett v. Atlantic Bank &c. Co.*, 157 Ga. App. 103 (1) (276 SE2d 152). Compare *Gray v. Cousins Mortgage &c. Investments*, 150 Ga. App. 296 (2) (257 SE2d 365). Certainly there remain legitimate questions as to whether all the subsequent purchasers were bound by or ratified the modification agreements to which they were not parties nor executed counterparts, and in the face of some evidence that Nodvin has so acknowledged. Nodvin as well asserted varying amounts owed him in different pleadings during the course of litigation, thus creating a disputed issue as to amount; it thus appears that the trial court erred in awarding summary judgments in his favor as to an amount certain and due under the notes. *Carlos Jones Constr. Co. v. Fed. Deposit Ins. Corp.*, 169 Ga. App. 899 (315 SE2d 458).

5. The trial court entered an order on June 4, 1985, pursuant to the automatic stay provisions of 11 USC § 362 because of the filing of a voluntary Chapter 7 petition in federal bankruptcy court by Concept. Since this order severing Concept as a defendant and staying any proceedings against it until further order of the court or separate trial of any claim against it was not appealed, the motion to dismiss Concept as a party to these appeals is granted. See generally, *Bethea v. Kennedy*, 176 Ga. App. 328 (2) (335 SE2d 732); *Gen. Motors Acceptance Corp. v. Yates Motor Co.*, 159 Ga. App. 215 (2) (283 SE2d 74).

6. Nodvin's motion for damages for frivolous appeal pursuant to OCGA § 5-5-6 is denied.

*Judgments reversed and cases remanded with direction. Banke, C. J., and Sognier, J., concur.*

DECIDED FEBRUARY 18, 1986 —
REHEARINGS DENIED MARCH 11, 1986.

*J. Renee Kastanakis, David H. Pope, W. Pitts Carr*, for appellants (case no. 71778).

*John P. MacNaughton, Jane C. Barwick,* for appellant (case no. 71779).
*T. Jackson Bedford, Jr., James C. Morton,* for appellee.
*Marvin P. Nodvin,* pro se.