A01A1747. SATILLA COMMUNITY SERVICE BOARD v. SATILLA HEALTH SERVICES, INC. et al.
(555 SE2d 188)

ELDRIDGE, Judge.

This is an interlocutory appeal from the denial of the motions for summary judgment of Satilla Community Service Board ("SCSB"), third-party defendant and fourth-party defendant, to the third-party

---

action by C. David Joyner, guardian of the property of Patricia Fields, defendant and third-party plaintiff, and the fourth-party action brought by John F. Michaels, M.D., and Satilla Health Services, Inc., third-party defendants and fourth-party plaintiffs. We affirm as to the denial of summary judgment as to implied contract indemnity and reverse as to denial of summary judgment for sovereign immunity as to tort contribution and workers' compensation as the exclusive remedy for implied indemnity in tort and for contribution for joint tortfeasors.

SCSB contracted with Satilla Park Hospital, a subdivision of Satilla Health Services, to accept and treat SCSB's clients/patients for mental health services. Fields, a SCSB client, was admitted as an emergency psychiatric patient to Satilla Park Hospital operated by Satilla Health Services and staffed by Dr. Michaels. On March 4, 1998, Fields was released from the hospital. On March 5, 1998, under her treatment plan devised by SCSB and Dr. Michaels, Fields went to SCSB; there, she stabbed to death Marie W. Rowell, her SCSB caseworker, who was acting in the scope of her employment for SCSB.

Rowell's estate and her child's guardian sued Joyner, as guardian of the property of Fields, for the tort and wrongful death. On May 19, 2000, Joyner brought a third-party action against Dr. Michaels, Fields' psychiatrist at Satilla Park Hospital, and against Satilla Health Services for contribution and implied indemnity. Dr. Michaels and Satilla Health Services, in turn, brought a fourth-party action against SCSB. On May 19, 2000, Joyner amended the third-party action to add SCSB as an additional third-party defendant. SCSB filed a motion for summary judgment against the third- and fourth-party actions, which was denied.

SCSB contends that the trial court erred in denying its motions for summary judgment as to the third- and fourth-party actions against it.

1. (a) SCSB contends that it is entitled to sovereign immunity from tort liability as an agency or department of the state. We agree.

Under Article I, Section II, Paragraph IX (d) of the 1983 Constitution of Georgia and the Georgia Tort Claims Act, OCGA § 50-21-20 et seq., the State of Georgia has sovereign immunity for itself, its officers, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions except to the extent of statutory waivers of such immunity. *Miller v. Ga. Ports Auth.*, 266 Ga. 586, 588-589 (470 SE2d 426) (1996). A community service board is either a state agency or department within the constitution and Georgia Tort Claims Act and is subject to sovereign immunity to the extent it is not waived. See *Youngblood v. Gwinnett Rockdale &c. Svc. Bd.*, 273 Ga. 715, 716-717 (545 SE2d 875) (2001). Under OCGA § 50-21-24 (7), the "assault and battery" exclusion from waiver of sover-

eign immunity extends not only to state employees but also to other parties that are tortfeasors. "The focus, therefore, is not on the duty allegedly breached by the State but on the act causing the underlying loss regardless of who committed the act." Id. at 717 (3); see also *Dept. of Human Resources v. Coley*, 247 Ga. App. 392, 394 (1) (544 SE2d 165) (2000). Therefore, SCSB is entitled to summary judgment as to any tort theory of contribution and implied indemnity for a tort in the nature of an assault and battery, including murder. *Youngblood v. Gwinnett Rockdale &c. Svc. Bd.*, supra (barring contribution for assault and battery among joint tortfeasors); see generally, as to the right of contribution among joint tortfeasors, *Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475, 476-477 (306 SE2d 290) (1983); *Rolleston v. Cherry*, 226 Ga. App. 750, 754 (2) (a) (487 SE2d 354) (1997) (joint tortfeasors liable for contribution and indemnity). Thus, the trial court should have granted summary judgment as to the third-party claim of Joyner and the fourth-party action of Dr. Michaels and Satilla Health Services sounding in tort for contribution or common law indemnity for tort.

(b) SCSB has no sovereign immunity as to claims sounding in breach of contract or indemnity as a contractual right, because the constitution waived sovereign immunity based upon theories of contract liability. 1983 Ga. Const., Art. I, Sec. II, Par. IX (c); *Youngblood v. Gwinnett Rockdale &c. Svc. Bd.*, supra at 717-718 (4); *Miller v. Ga. Ports Auth.*, supra at 588-589; *Waters v. Glynn County*, 237 Ga. App. 438, 439 (1) (514 SE2d 680) (1999).

Fields was a client of SCSB for whom it contracted with Satilla Health Services to treat her. Satilla Health Services had a written contract with SCSB to treat clients sent for mental health services, i.e., Fields. Thus, Joyner on Fields' behalf raised the issue that she was a third-party beneficiary of this written contract and that SCSB breached the contract, requiring SCSB to do client screens, to make a history, to do physical exams, and to provide medication, which failure contributed to Dr. Michaels' failure to hospitalize Fields or to properly medicate her as a danger to others, because of SCSB's failure to provide an adequate case history, indicating her prior violent propensities and criminal history. OCGA § 9-2-20 (b); *Youngblood v. Gwinnett Rockdale &c. Svc. Bd.*, supra.

Satilla Health Services had a contractual relationship with SCSB, which gave rise to this action, and on which it sued SCSB for contractual indemnity even though the contract did not expressly confer such a right. In fact, Satilla Health Services expressly indemnified SCSB from the acts or omissions of Satilla Health Services, its agents, employees, and subcontractors. Such express indemnity would include separate or concurrent acts or omissions of Satilla Health Services with SCSB, involving Rowell's murder by Fields.

However, the contract said nothing regarding acts or omissions of concurrent negligence of SCSB, Satilla Health Services, and subcontractor Dr. Michaels which caused injury or death. Further, the contract was silent as to indemnity by SCSB to Satilla Health Services for the acts or omissions of SCSB's agents, employees, and subcontractors concurring in any injury or death. Thus, Satilla Health Services' fourth-party action sounds in implied contract of indemnity.

Dr. Michaels, as a subcontractor of Satilla Health Services, was not a signer of the agreement between SCSB and Satilla Health Services; however, Satilla Health Services acted only through its agents, employees, and subcontractors, as contemplated by the contract and the express indemnity to SCSB. SCSB expected Satilla Health Services to function in such fashion, because the written agreement stated that "[n]othing contained in this contract shall be construed to constitute [Satilla Health Services] or any of its employees, agents, or subcontractors as a partner, employee, or agent of [SCSB]. . . ." Therefore, Dr. Michaels also was a third-party beneficiary of the contract mandating SCSB's duties to screen Fields prior to admission, to do a history of Fields prior to her admission, to do physical examinations of Fields prior to admission, to provide medication prescribed by Satilla Health Services' physicians for Fields after admission, to develop a treatment and discharge plan in conjunction with Satilla Health Services for Fields after admission, and to daily review Fields' status with Satilla Health Services.

> In order for a third party to have standing to enforce a contract under (OCGA § 9-2-20 (b)) it must clearly appear from the contract that it was intended for his (or her) benefit. The mere fact that (the third party) would benefit from [the] performance of the agreement is not alone sufficient. *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 391 (1) (367 SE2d 278) (1988) [(indemnity agreement)].

(Punctuation and emphasis omitted.) *Burton v. DeKalb County*, 209 Ga. App. 638, 639 (434 SE2d 82) (1993).

> It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. Such an independent harm may be found because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm. However, not all breaches of contract are also independent torts: where defendant's negligence ends merely in

nonperformance of the contract and where defendant is not under any recognized duty to act apart from contract, the courts generally still see no duty to act affirmatively except the duty based on — and limited by — defendant's consent. In those circumstances, an action in tort may not be maintained for what is a mere breach through non-action or through ineffective performance (which is the same thing) of a contract duty — the duty must arise independent of contract to constitute a tort.

(Citations, punctuation and emphasis omitted.) *Sheppard v. Yara Engineering Corp.*, 248 Ga. 147, 148-149 (281 SE2d 586) (1981).

For the breach of a contract to give rise to a tort action, such breach of contract must also constitute a violation of a duty imposed by law to the public either by statute, law, or arising from the relationship created by contract, and there must be misfeasance rather than nonfeasance in failing to perform the contract for a tort to arise. *Peterson v. First Clayton Bank &c. Co.*, 214 Ga. App. 94, 99-100 (1) (b) (447 SE2d 63) (1994); *Commercial Bank &c. Co. v. Buford*, 145 Ga. App. 213, 214-215 (243 SE2d 637) (1978); *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 662-663 (1) (222 SE2d 162) (1975). "A study of [these] authorities and similar cases shows that in every instance where such tort cause of action was upheld there was negligence in the performance of a duty owed either apart from a contract or arising from the contract rather than from a failure to carry out the contract itself." (Citation and punctuation omitted.) *Kenney v. Piedmont Hosp.*, supra at 662 (1). "Generally, a mere breach of a valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a tort." *Mauldin v. Sheffer*, 113 Ga. App. 874, 877 (150 SE2d 150) (1966). Here, the contract rights violated by SCSB were a failure to perform duties imposed by contract; therefore, this is not an action sounding in tort, arising from contract. See *Burton v. DeKalb County*, supra at 639 (duty of owner/landlord under contract to maintain premises in a safe condition for invitees). Thus, the denial of summary judgment was proper on this issue.

2. SCSB contends that, since Rowell's dependent received death benefits under workers' compensation, the exclusive remedy immunity of workers' compensation bars the third- and fourth-party actions against it for anything other than contractual indemnity.

Because of [OCGA § 34-9-11], an employer cannot be held liable as a joint tortfeasor with a third party, even when the employer's negligence contributes to the employee's injuries. Thus, an employer who pays workers' compensation benefits

to an employee is immune from liability as a third-party defendant in the employee's tort action.

(Citations omitted.) *Ga. Dept. of Human Resources v. Joseph Campbell Co.*, 261 Ga. 822, 823 (1) (411 SE2d 871) (1992). Implied indemnity as a joint tortfeasor for contribution is also barred. Id. at 823 (2).

The Workers' Compensation Act does not bar statutorily granted indemnification. OCGA § 46-3-40 (b); *Flint Elec. Membership Corp. v. Ed Smith Constr. Co.*, 270 Ga. 464, 466 (511 SE2d 160) (1999). "[I]f the third party and employer stand in a special legal relationship that carries with it the obligation of the employer to indemnify the third party, this relational right of indemnity may be enforced without offending the exclusive-remedy clause." (Citation omitted.) Id. at 465-466. Further, the Workers' Compensation Act does not bar a defendant from enforcing a contractual right of indemnity against the employer who has paid workers' compensation benefits to the employee or to the employee's beneficiary. See *Ga. Dept. of Human Resources v. Joseph Campbell Co.*, supra at 823; *Seaboard Coast Line R. Co. v. Maverick Materials*, 167 Ga. App. 160, 161-163 (305 SE2d 810) (1983); see also *Gen. Tel. Co. &c. v. Trimm*, 252 Ga. 95, 97 (311 SE2d 460) (1984); *Sargent Indus. v. Delta Air Lines*, 251 Ga. 91, 94 (303 SE2d 108) (1983).

> The great majority of cases hold that, when the relation between the parties does not spring from a contract . . . , the third party cannot recover indemnity from the employer, since an active or primary wrongdoer does not have an implied obligation, capable of penetrating the exclusiveness rule of workmen's compensation law, to indemnify a passive or secondary tortfeasor.

(Citation and punctuation omitted.) *Ga. Dept. of Human Resources v. Joseph Campbell Co.*, supra at 823 (2). Further, Satilla Health Services gave an express indemnification to SCSB for the negligence of Satilla Health Services, its agents, employees, and subcontractors. Therefore, an identical reciprocal implied contractual indemnity arose that SCSB indemnify Satilla Health Services for the acts or omissions of SCSB, its agents, employees, and subcontractors. In this case both third-party and fourth-party actions arose out of a contractual relationship between the parties and SCSB, although there was no express contractual indemnity provision to them from SCSB.

Georgia has long recognized implied contract indemnity. *Central of Ga. R. Co. v. Lester*, 118 Ga. App. 794, 801 (2) (165 SE2d 587) (1968); see also *Robert & Co. Assoc. v. Pinkerton & Laws Co.*, 120 Ga. App. 29, 34 (2) (169 SE2d 360) (1969); *Central of Ga. R. Co. v. Macon*

*R. &c. Co.*, 9 Ga. App. 628, 631 (2) (71 SE 1076) (1911). "The duty to indemnify may arise from express or implied agreement to indemnify, or may arise by operation of law, independently of contract." *Central of Ga. R. Co. v. Macon R. &c. Co.*, supra at 631 (2). However, the parties must be in a contractual relationship, as in this case. Further, "[c]ontracts indemnifying one against the consequences of his own negligence are not favored, but will be given effect where the intent is expressed in plain and unequivocal terms." (Citation omitted.) *Rome Builders Supply v. Rome Kraft Co.*, 104 Ga. App. 488-489 (3) (122 SE2d 133) (1961); see also *Batson-Cook Co. v. Ga. Marble &c. Co.*, 112 Ga. App. 226, 230 (144 SE2d 547) (1965). These third-party and fourth-party actions "may be viewed as a breach of an implied contract of indemnity and that we may draw from the general law of indemnity to assist us in arriving at the just and fair conclusion." *Alterman Foods v. G.C.C. Beverages*, 168 Ga. App. 921, 923 (310 SE2d 755) (1983).

The implied contractual indemnification in this case is not the kind of implied indemnification that Georgia courts will disallow, i.e., where the indemnitor indemnifies the indemnitee against the indemnitee's sole negligence. *Rome Builders Supply v. Rome Kraft Co.*, supra at 488-489; *Batson-Cook Co. v. Ga. Marble &c. Co.*, supra at 230. "Georgia courts never imply an agreement to indemnify another for one's own negligence in the absence of express language." (Punctuation omitted.) *Central of Ga. R. Co. v. Lester*, supra at 801 (2); see also *Park Pride Atlanta v. City of Atlanta*, 246 Ga. App. 689, 691 (541 SE2d 687) (2000). "Due to public policy concerns, absent explicit language to the contrary, an indemnity agreement cannot be interpreted to hold an indemnitee harmless from its own negligence. *Ga. State Tel. Co. v. Scarboro*, 148 Ga. App. 390, 391 (2) (251 SE2d 309) (1978)." *Park Pride Atlanta v. City of Atlanta*, supra at 690-691 (1).

However, although language in an agreement may not be sufficiently explicit to indemnify the indemnitee against liability resulting strictly from its own negligence alone, such less than explicit language may be sufficient to require indemnification for damages resulting from the combination of the indemnitee's negligence and the indemnitor's negligence. *Ga. State Tel. Co. v. Scarboro*, supra at 391; *Arthur Pew Constr. Co. v. Bryan Constr. Co.*, 148 Ga. App. 114, 115 (3) (251 SE2d 105) (1978) (incorporation by reference from contract between general and owner to apply to subcontractor); *Binswanger Glass Co. v. Beers Constr. Co.*, 141 Ga. App. 715, 717-718 (3) (234 SE2d 363) (1977); *Peacock Constr. Co. v. Montgomery Elevator Co.*, 121 Ga. App. 711, 713-714 (3) (175 SE2d 116) (1970). Thus, an implied contract of indemnity can arise where the indemnification goes only to the acts and omissions of the indemnitor-tortfeasor, its agents, employees, and subcontractor or the concurrent negligence of

the indemnitor and indemnitee. See generally *Ga. Ports Auth. v. Central of Ga. R. Co.*, 135 Ga. App. 859, 862-865 (219 SE2d 467) (1975) (allegedly ambiguous written indemnity agreement). The trial court properly denied summary judgment.

3. SCSB contends that Fields' third-party action for implied contract indemnification is barred by the statute of limitation, because it is predicated upon a theory of medical malpractice.

"Where no funds have yet been expended, a party's right to seek indemnification has not yet actualized." (Citation omitted.) *Davis v. Southern Exposition Mgmt. Co.*, 232 Ga. App. 773, 775 (2) (503 SE2d 649) (1998). "Since there are claims against [the indemnitee] presently pending trial and no funds have been expended by [the indemnitee] relating to these claims so as to accrue a right of indemnity against [the indemnitor], he has not incurred any 'actual legal liability' in order to assert a claim for indemnity at this point in the litigation." (Citation omitted.) *Carr v. Nodvin*, 178 Ga. App. 228, 233 (3) (342 SE2d 698) (1986). The statute of limitation for contribution or indemnity runs after 20 years from settlement or final judgment. OCGA § 9-3-22; *Rolleston v. Cherry*, supra at 755 (2) (b); *Krasaeath v. Parker*, 212 Ga. App. 525, 526 (1) (441 SE2d 868) (1994).

However, if the right of contribution or indemnity was based upon medical malpractice by a joint tortfeasor, then the statute of repose would abrogate any action commenced more than five years after the date on which the act or omission occurred. See OCGA § 9-3-71 (b); *Krasaeath v. Parker*, supra at 526-527. On May 19, 2000, this third-party action was commenced, regarding a medical malpractice which occurred on or prior to March 4, 1997, well within the statute of repose. Thus, denial of the motion for summary judgment was proper.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Miller, J., concur.*

DECIDED OCTOBER 11, 2001 —

*Whelchel, Brown, Readdick & Bumgartner, Richard K. Strickland*, for appellant.

*Taylor, Odachowski & Sperry, Philip R. Taylor, Hall, Booth, Smith & Slover, Michael G. Frick, W. Grady Pedrick, John R. Thigpen, Sr.*, for appellees.