S02G0252. SATILLA COMMUNITY SERVICE BOARD v. SATILLA HEALTH SERVICES, INC. et al.

(573 SE2d 31)

FLETCHER, Chief Justice.

We granted Satilla Community Service Board's (the "Board") petition for certiorari to consider whether the Court of Appeals of Georgia erred by using a principle it labeled "identical reciprocal implied contractual indemnification" to find an implied contractual duty to indemnify and, thereby, avoid the workers' compensation exclusive remedy bar.[1] Because we find no support in Georgia law for "identical reciprocal implied contractual indemnification" and the Board was otherwise entitled to summary judgment, we reverse.

Patricia Fields killed Marie Rowell, one of the Board's employees. Fields was a mental health patient of Satilla Health Services, Inc. ("SHS") and Dr. John Michaels. Rowell's estate and child sued C. David Joyner, as the guardian of Fields's property, for wrongful death and pain and suffering.

Joyner filed a third-party claim against SHS and Michaels, alleging Michaels's negligence contributed to Fields's stabbing of Rowell, and SHS was responsible for Michaels's negligence under respondeat superior. SHS and Michaels, in turn, sued the Board as a fourth-party defendant, claiming negligence, breach of a contract between the Board and SHS,[2] and a right to contractual indemnifica-

---

tion Agreement" with the couple upon their purchase and renovation of the farm they had under contract.

[1] See *Satilla Commun'y Serv. Bd. v. Satilla Health Serv.*, 251 Ga. App. 881 (555 SE2d 188) (2001).

[2] We recognize that the contract is between the Board and Satilla Park Hospital, which apparently is a subdivision of fourth-party plaintiff SHS. For ease of reference, however, we refer to SHS and the Board as the parties to the contract.

tion. Joyner, then, filed breach of contract and negligence claims against the Board, contending that Fields was a third-party beneficiary of the contract between the Board and SHS.

The following diagram shows the various claims in this case:

The trial court denied the Board's motion for summary judgment; and the court of appeals reversed in part and affirmed in part, holding that the Board was entitled to summary judgment on the negligence claims, but not on the contract claims. We now examine whether the trial court should have granted summary judgment to the Board on the contract claims, as well.

1. "Workers' compensation is the exclusive remedy of employees against employers for work-related injuries."[3] An employer who has paid workers' compensation to one of its employees is immune from liability for claims of contribution and indemnification arising from that employee's tort action, unless there is a contractual, statutory, or special relationship between the employer and the third-party that would require contribution or indemnification.[4]

Because the Board paid workers' compensation benefits for

[3] *Georgia Dept. of Human Res. v. Joseph Campbell Co.*, 261 Ga. 822, 822-823 (411 SE2d 871) (1992).

[4] *Flint Elec. Membership Corp. v. Ed Smith Constr. Co.*, 270 Ga. 464, 465 (511 SE2d 160) (1999); *Joseph Campbell*, 261 Ga. at 823; *Sargent Indus. v. Delta Air Lines*, 251 Ga. 91, 92 (303 SE2d 108) (1983).

Rowell's death, it is not obligated to contribute to or indemnify a third-party for damages arising from Rowell's death, absent a contractual, statutory, or special relationship between the Board and that third-party. Here, there is no statutory or special relationship that would require the Board to indemnify SHS or Michaels for damages arising from Rowell's death.

Additionally, the Board is under no contractual obligation to indemnify SHS or Michaels. The contract between the Board and SHS does not expressly require the Board to indemnify SHS or Michaels. Rather, it expressly requires SHS to indemnify the Board without requiring the Board to indemnify SHS. Despite the parties having specifically addressed indemnification obligations in their agreement, the court of appeals found that the Board had an implied duty to indemnify SHS and Michaels, under a theory it labeled "identical reciprocal implied contractual indemnity." The court cited no authority to support this legal principle, and the parties have cited no Georgia case that recognizes such a doctrine. Furthermore, we have found no authority in Georgia law to hold, under the facts of this case, that the Board had an implied obligation to indemnify SHS and Michaels.

Because the Board has neither an express nor implied contractual duty to indemnify SHS and Michaels for any damages arising from Rowell's death, the workers' compensation exclusive remedy doctrine bars their claims for indemnification against the Board. Accordingly, the trial court should have granted the Board summary judgment on SHS and Michaels's claims.

2. Joyner asserts that his claim on behalf of Fields does not seek to hold the Board secondarily liable. Instead, once the Board was added to the action as an impleaded party, Joyner filed a direct claim for breach of contract. After a party has been properly impleaded into an action based on a claim for secondary liability, OCGA §§ 9-11-14 and 9-11-18 permit certain direct claims to be brought against the impleaded party.[5]

As discussed above, however, the workers' compensation exclusive remedy provision rendered the Board immune from secondary liability, except in a few instances that are not applicable here. Joyner cannot bring a direct claim against the Board because it was not a properly impleaded defendant, and Joyner cannot bring an impleader claim against the Board because he is not seeking to make the Board secondarily liable for any damages Rowell recovers from Joyner.[6] Therefore, the trial court should have dismissed without

---

[5] See also *Cohen v. McLaughlin*, 250 Ga. 661, 662-664 (301 SE2d 37) (1983).
[6] *Cohen*, 250 Ga. at 662.

prejudice Joyner's contract claim against the Board. To the extent any of SHS and Michaels's claims can be construed as seeking to hold the Board directly liable, those claims also should be dismissed.

3. In summary, the workers' compensation exclusive remedy provision bars the claims against the Board to the extent those claims seek to hold the Board secondarily liable. Because the Board was not made a party to this action based upon a viable claim for secondary liability, any claims for direct liability cannot be brought under OCGA §§ 9-11-14 and 9-11-18.[7] Accordingly, the trial court should have granted the Board summary judgment on SHS and Michaels's claims for secondary liability and dismissed without prejudice Joyner's claims and any of SHS and Michaels's claims that sought direct liability. Because our analysis has resolved all claims that were brought against the Board in this case, we do not need to address the remaining certiorari questions.

*Judgment reversed. All the Justices concur.*

HINES, Justice, concurring.

I agree that the judgment of the Court of Appeals must be reversed because the Board was entitled to judgment in its favor as a matter of law on the third-party claim and the fourth-party claim against it. I too fail to discern any authority under Georgia law or under the circumstances of this case for preservation of the claims under the crafted theory of "identical reciprocal implied contractual indemnification." But I write separately to address significant questions raised by the flawed analysis of the Court of Appeals, and which were posed for resolution by this Court in granting certiorari.

1. The third-party action brought by Joyner against Dr. Michaels and SHS was plainly pled as one for medical malpractice by virtue of the direct negligence of Dr. Michaels and the imputed negligence of SHS. The pleading was styled as a "Third-Party Complaint for Medical Malpractice," alleging that Dr. Michaels failed to exercise that degree of skill and care ordinarily exercised by a psychiatrist generally under like conditions and similar circumstances in providing care for Fields, and that Dr. Michaels's negligence in caring for Fields deprived Fields of treatment that would have reduced her violent behavior, the failure causing Fields to inflict pain and suffering on Rowell and to stab her to death; the action further alleged that SHS was liable to Fields for the negligence of Dr. Michaels under the theory of respondeat superior. Appended to the action was a physician's affidavit pursuant to OCGA § 9-11-9.1, which requires an expert affi-

---

[7] Compare *Cohen*, 250 Ga. at 663 (trial court has discretion to dismiss or proceed with direct claim against properly impleaded third-party defendant when underlying action is settled).

davit to accompany an action for damages alleging professional malpractice.

Even though the pleadings contain the cursory statement that Dr. Michaels is liable to Fields for the claims against Fields and the incurred litigation fees, there is no stated basis for the liability other than Dr. Michaels's direct professional negligence. What is more, the third-party claim demands judgment against SHS and Dr. Michaels, not for part or all of the amount of any judgment secured by the plaintiffs against Fields, but instead in an open-ended amount in excess of $10,000.

> It has been firmly established that [OCGA § 9-11-14 (a)] authorizes a defendant, as a third-party plaintiff, to file a claim against a third-party defendant for secondary liability on the plaintiff's claim, i.e., a claim for liability over, but not a direct claim for damages. . . . " 'The absolute requirement of every third-party proceeding is that its purpose must be to impose upon the third-party defendant a liability for part or all of the liability asserted by the original plaintiff against the third-party plaintiff. A third-party action may be maintained only against one who is secondarily liable to the original defendant for part or all of the original plaintiff's claim. When a recovery by the plaintiff against the defendant would necessarily be followed by recovery for the defendant against the third-party defendant, then a third-party action is proper.' . . . 'it is not a device for bringing into an action any controversy which may happen to have some relationship with it.' "

*Cohen v. McLaughlin*, 250 Ga. 661, 662 (1) (301 SE2d 37) (1983). Typically, a third-party defendant may be involved in cases of indemnity, subrogation, contribution, warranty, and the like. *Lamb v. K. M. Insurance Co.*, 208 Ga. App. 746, 747 (431 SE2d 744) (1993); *Quality Ford Sales v. Greene*, 201 Ga. App. 206, 207 (410 SE2d 389) (1991). Plaintiffs are alleging Fields's liability for Rowell's pain, suffering, and death as the result of Fields's unprovoked attack on Rowell; Joyner on behalf of Fields is alleging the liability of Dr. Michaels and SHS for the negligent medical treatment of Fields. It certainly cannot be said that if there was a recovery by the plaintiffs against the assailant Fields, it would "necessarily follow" that Fields recover against Dr. Michaels and SHS for professional negligence in caring for her. Instead, this is a situation in which the third parties are being tendered as substitute defendants.[8] *Cohen v. McLaughlin,*

---

[8] This does not mean however that the plaintiffs are precluded from pursuing claims of

supra at 662 (1).

The claims for medical malpractice against Dr. Michaels and SHS were unauthorized as a third-party action in this suit. Consequently, their resulting fourth-party complaint against the Board, which is contingent upon their liability as third-party defendants, was not viable. *Cohen v. McLaughlin*, supra; *Lamb v. K. M. Insurance Co.*, supra; *Quality Ford Sales v. Greene*, supra.

2. The premise of Joyner's third-party claim against the Board for breach of contract is that Fields was a third-party beneficiary of the contract between the Board and the hospital. Fields's lack of standing bears comment.

It is without dispute that

> "[i]n order for a third party to have standing to enforce a contract . . . it must appear clearly from the contract that it was intended for [the benefit of the third party]. The mere fact that [the third party] would benefit from performance of the agreement is not alone sufficient." [Cit.]; OCGA § 9-2-20 (b). "Unless such an intention is shown on the face of the contract, defendant is under no duty [to the third party] and consequently plaintiff acquires no right as the [third-party] beneficiary." [Cit.]

*Scott v. Mamari Corp.*, 242 Ga. App. 455, 457 (1) (530 SE2d 208) (2000). Accord *Vaughn, Coltrane & Assoc. v. Van Horn Constr.*, 254 Ga. App. 693, 694 (563 SE2d 548) (2002); *Anderson v. Houser*, 240 Ga. App. 613, 619 (1) (523 SE2d 342) (1999).

Even though the contract between the Board and the hospital was for the provision of crisis stabilization services for the Board's "consumers," like Fields, the contract was primarily intended for the benefit of the Board, that is, to secure an entity to furnish emergency mental health services, and for the benefit of the hospital, that is, monetary profit. The fact that the "consumer" might gain from the agreement is not sufficient, without more, to confer on the "consumer" the status of a third-party beneficiary of the contract.

In the recent case of *Youngblood v. Gwinnett Rockdale Newton Community Service Board*, 273 Ga. 715 (545 SE2d 875) (2001), the mother placed her mentally disabled daughter in a residential home sponsored by the Gwinnett Rockdale Newton Community Service Board (GRNCSB). The GRNCSB entered into a contract with a

---

negligence against Dr. Michaels and SHS in the professional care of Fields. See *Bradley Center v. Wessner*, 250 Ga. 199 (296 SE2d 693) (1982). But they have not done so in the present action. In fact, it has been represented in brief that plaintiffs have now filed a separate lawsuit against Dr. Michaels and SHS for the wrongful death of Rowell.

couple to care for the daughter. It was later revealed that the daughter had been beaten by the couple, who subsequently were convicted of battery and simple battery, and she was removed from their home. The mother, as guardian of the daughter's property, filed suit against the GRNCSB alleging breach of contract and negligence. The trial court granted summary judgment to the GRNCSB. This Court found no evidence of a written contract between the GRNCSB and the daughter covering the date on which she received her injuries; therefore, the GRNCSB was entitled to summary judgment on the breach of contract claims to the extent that such claims sought to enforce agreements to which the daughter was a party. However, there was the further contention that the daughter was the intended third-party beneficiary of the written contracts between the GRNCSB and the wrongdoing caregiver, and therefore, the daughter could maintain an action against the GRNCSB as if she were a party to the contract. In allowing a remand to the trial court for consideration of the third-party beneficiary claim, this Court made it plain that this was warranted only because there were at least two written agreements between the GRNCSB and the caregiver identifying the daughter as the resident for whom personal support and residential services would be provided during the relevant period of time.[9] Id. at 717 (4). In this case, there is no evidence of any written agreement between the hospital or SHS and the Board specifically identifying Fields as the consumer for whom mental health services would be provided during the time in question.[10] Accordingly, Joyner, on behalf of Fields, could not maintain a claim against the Board for breach of contract.

DECIDED NOVEMBER 25, 2002.

*Whelchel, Brown, Readdick & Bumgartner, Terry L. Reddick, Richard K. Strickland*, for appellant.

*Hall, Booth, Smith & Slover, Michael G. Frick, Norman D. Lovein, Weinberg, Wheeler, Hudgins, Gunn & Dial, Johnathan T. Krawcheck, Gibson & Spivey, Douglas L. Gibson, Cottingham &*

---

[9] This Court made no ruling regarding the daughter's status as a third-party beneficiary; that matter was left for determination by the trial court.

[10] The voluminous record is replete with documentation of Fields's physical and psychiatric history, conditions, and treatments, and some of these documents were prepared either by the hospital or the Board; however, there is no showing of any document which would confer upon Fields the status of third-party beneficiary of the contract at issue.

*Porter, Robert L. Porter, Jr., Dillard & Crowley, Terry A. Dillard, John R. Thigpen, Sr., W. Grady Pedrick,* for appellees.