### 58296. GEORGIA-CAROLINA BRICK & TILE COMPANY v. BROWN et al.

BIRDSONG, Judge.

The Browns sued Georgia-Carolina Brick & Tile Co. for negligence and gross negligence, intentional and wilful wrongdoing and making fraudulent misrepresentations, all concerning the delivery and installation of the wrong brick while defendant-appellant repeatedly assured appellees the brick was no problem. From a jury verdict awarding $7,700 actual damages, $3,300 attorney fees, and $2,000 punitive damages, Georgia-Carolina appeals, enumerating twelve errors of law. *Held:*

1. In Enumerations 1, 2, 3, and 4, appellant contends that the evidence does not present a case for fraud, gross negligence, and intentional and wilful torts, and does not support the verdict, and therefore that the trial court erred in denying appellant's motions for directed verdict, judgment notwithstanding the verdict, and new trial. We do not agree. The evidence showed that appellant agreed with the Brown's contractor, Hitt, to reserve some 20,000 bricks for the Brown's house under construction, all brick to be from the same "run" and of the same range of color, but that brick from two different ranges was shipped in the first shipment, and none of the proper range bricks was shipped from the run of brick which was promised. After some of the brick had been laid, the Browns and Hitt called appellant to advise that the colors appeared disparate or mottled. Three times, at the appellees' request, appellant's sales agent, Murphy, came to the construction site and advised appellees that he could see no color differences, that there was no problem with the brick, and the brick would be all right when it was cleaned up and when it dried after the rains. Murphy advised the

contractor to continue laying the brick. At the same time, after his first visit, Murphy reported in writing to the company that "suggested cleanup will tone down color difference somewhat but will not solve the entire problem." Murphy admitted that the problems with the color differences in the disparate brick runs were obvious to him from his first visit, but he had continued to advise appellees that there would be no problem and the brick would match. A packaging slip attached to each lot of bricks delivered by appellant contained the statement that no complaints about color would be considered after the bricks were laid in the wall. The appellees and their contractor relied on the advice of Murphy and continued to lay the brick. An expert witness testified that the brick on appellee's house was noticeably disparate in color, and that it was not acceptable to him as a contractor, professional engineer, or brickmason. The necessary elements of fraud are present in this evidence (see *City Dodge v. Gardner,* 232 Ga. 766, 769 (208 SE2d 794)); the statements to appellees by appellant's agent Murphy that the brick would match when dry and therefore there was no problem, were not mere opinions, or promises as to future events, but they were representations of fact as to the inherent nature and quality of the brick, by one upon whom appellees were entitled to rely as having special knowledge of bricks made by his employer. *Daugert v. Holland Furnace Co.,* 107 Ga. App. 566, 570 (130 SE2d 838). We do not think that the fact that Mrs. Brown was not present when the misrepresentations were made by Murphy to her husband and to Mr. Hitt precludes her from recovering from the fraud, for she is a real party in interest, holds title to the property damaged, and is directly injured by the fraud. *Sawyer v. Allison,* 151 Ga. App. 334 (259 SE2d 721). See *Hines v. Wilson,* 164 Ga. 888, 889 (2b) (139 SE 802); *Young v. Hall,* 4 Ga. 95 (4), 100. Nor are the Browns deprived of a cause of action against appellant for fraud merely because appellant's contract was with the contractor; the action here is in tort which requires no privity, *Sawyer,* supra; Code § 105-106, and the fraud resulted in damage to appellees as the real parties in interest. Code § 3-109. The sole determination here is whether there is any evidence sufficient to

authorize the verdict, and we find that there is. *Hallford v. Banks,* 236 Ga. 472 (224 SE2d 35); *Bell v. Brewton,* 139 Ga. App. 463, 464 (228 SE2d 600). It necessarily follows that the trial court did not err in denying appellant's motions for new trial, directed verdict and judgment n. o. v. *Hallford,* supra; *Lanier Petroleum v. Hyde,* 144 Ga. App. 441, 442 (241 SE2d 62).

2. A. Appellant contends the trial court erred in submitting to the jury the issues of punitive damages and attorney fees, and denying appellant's motions for judgment on those issues. The trial court did not err. See especially, *Thibadeau Co. v. McMillan,* 132 Ga. App. 842, 843-844 (209 SE2d 236). The award of punitive damages requires a tort accompanied by aggravating circumstances either in the act or the intention, evidenced by "wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." *BLI Const. Co. v. Debari,* 135 Ga. App. 299, 301 (217 SE2d 426); Code § 105-2002. The injury sued for in this case is not merely the delivery by appellant of the wrong brick, but the repeated representations by appellant's agents, upon which appellees and their contractor relied, that the brick would be all right when it dried; and this while, as the evidence showed, appellant's agent knew that the brick from two different runs would not match when dry. *Thibadeau,* supra. There is in this showing something from which the jury could, and did, find more than the mere inadvertence that will preclude the recovery of punitive damages. See *Southern Bell Tel. &c. Co. v. Citizens &c. Realty Co.,* 141 Ga. App. 216, 219-220 (233 SE2d 9). Furthermore, there was, in these circumstances, evidence from which the jury could find bad faith sufficient to award attorney fees: that the appellant knew full well there was a color difference in the two runs of brick which would not be cured when the brick dried, yet continued to assure appellees the brick would match, until the entire back side of the house was laid with brick. This view of the evidence, which we must assume in deference to the jury's verdict (*Frost v. Williamson,* 239 Ga. 266, 268 (236 SE2d 615)), authorizes a finding of bad faith or that appellant put the Browns to

the unnecessary trouble and expense of replacing the fully-laid brick through litigation. *Thibadeau,* supra; Code § 20-1404.

B. Appellant contends that attorney fees were not authorized under Code § 20-1404 in this case because appellees were awarded substantially less than they had demanded in actual damages.

We recognize that some cases have held that to be the rule (e. g., *Southern Bell,* supra, pp. 222-223 and cits.; *Broyles v. Johnson,* 103 Ga. App. 102, 105 (118 SE2d 734) and cits.), but we are unable to perceive that the size of the jury verdict has any absolute, logical connection to the existence of bad faith in the evidence. We further observe that in most earlier cases so holding, there was found to be no bad faith in the evidence so as to authorize attorney fees according to Code § 20-1404 (see, e. g., *Schafer Baking Co. v. Greenberg,* 51 Ga. App. 324, 325 (180 SE 499)), so the pronouncement that "where the amount of defendant's liability . . . is substantially less than the amount sued for, a finding for attorney fees was unauthorized" (*Schafer Baking Co.,* supra), was, if not mere dictum, perhaps perceived merely as a means of measuring the evidence to determine bad faith. Here, too, we fail to see more than a coincidental connection; the presence or absence of bad faith on the part of a defendant lies solely in the evidence of his conduct in dealings with the plaintiff out of which the suit arose (*Southern Bell,* supra, p. 222), and not in the plaintiff's ability to prove up his damages, which can unquestionably be dependent on a spate of factors unrelated to the defendant's moral culpability. Nevertheless, the rule has assumed the force of law, perhaps culminating most unfortunately in University Computing Co. v. Lykes-Youngstown Corp., 504 F2d 518, 548 (5th Cir. 1974), where the court denied an attorney fees award even though it expressly found bad faith in the defendant's conduct.

The problem in logic presented by this "gloss" which some of our cases have placed on the requirements of Code § 20-1404 (University Computing Co., supra) is manifest in cases dealing with injunctions. In *B-X Corp. v. Jeter,* 210 Ga. 250 (3), 255 (78 SE2d 790), the court approved an award of attorney fees, though there were no damages

awarded, because the defendant had acted in bad faith. In *Adams v. Cowart,* 224 Ga. 210, 215 (160 SE2d 805), a later injunction case, the court, being explicitly faced with the dilemma of having to justify the award of attorney fees where there were no damages awarded, merely cited *B-X Corp.* supra, as authority that injunction cases are exceptions to the rule which prohibits attorney fees where the jury has found no damages or has found substantially less than was prayed. The rationale that would distinguish injunction cases from other cases where there is actual bad faith but less damages awarded than claimed, is not explained. In *G. E. C. Corp. v. Levy,* 126 Ga. App. 604, 608 (191 SE2d 461), a case not dealing with an injunction, the court had to rely on the injunction exception case, *Adams,* supra, to approve the attorney fees award.

The seed of all this confusion first appears in *Southern Mut. Ins. Co. v. Turnley,* 100 Ga. 296, 304 (27 SE 975) and *Queen Ins. Co. v. Peters,* 10 Ga. App. 289, 294 (4) (73 SE 536), where the court was dealing solely with attorney fees provided by Civil Code § 2140, Code of 1882 (now Code § 56-1206: bad faith in refusing to pay *insurance* claim). After holding that it found no factual bad faith so as to authorize attorney fees under Civil Code § 2140 (Code § 56-1206), the court in *Southern Mutual,* supra, remarked that "the plaintiffs claimed the full amount of the policy, and the jury found that the defendant was warranted in resisting this claim, the amount found by them as due under the policy being considerably less than the amount claimed." The bad faith alleged against the insurance company defendant in *Southern Mutual,* supra, is *bad faith in resisting a claim on a policy, or refusal to pay* for which attorney fees are awarded pursuant to Code § 56-706, and not under Code § 20-1404. *Bankers Health &c. Co. v. Plumer,* 67 Ga. App. 720, 726 (21 SE2d 515). Attorney fees under Code § 20-1404 are expressly prohibited for mere refusal to pay, but rather are grounded in the defendant's having "acted in bad faith in the transaction and dealings out of which the cause of action arose." *Lovell v. Frankum,* 145 Ga. 106, 109 (88 SE 569). There is, therefore, a clear distinction between bad faith authorizing attorney fees under Code §

20-1404 and bad faith in refusing to pay an insurance claim authorizing recovery under Code § 56-1206. *Traders Ins. Co. v. Mann,* 118 Ga. 381, 386 (45 SE 426). In this regard, insurance cases are sui generis. Even so, as to whether an insurance company's refusal to pay a claim is in bad faith so as to authorize attorney fees *under Code § 56-1206,* we doubt that the jury's ultimate decision that plaintiff was not entitled to all he had claimed necessarily indicates that the insurance defendant did not act in bad faith in refusing to pay (see especially *Canal Ins. Co. v. Winge Bros.,* 97 Ga. App. 782, 786 (104 SE2d 525); *New York Life Ins. Co. v. Williamson,* 53 Ga. App. 28, 38 (184 SE 755); *Metropolitan Life Ins. Co. v. Lovett,* 50 Ga. App. 763 (4) (179 SE 253); and *Central Mfgrs. Mut. Ins. Co. v. Graham,* 24 Ga. App. 199 (4) (99 SE 434)), any more than a jury verdict awarding plaintiff *everything* he had claimed, would necessarily indicate the defendant *did* act in bad faith. See *Liverpool &c. Ins. Co. v. Ellington,* 94 Ga. 785, 791-792 (21 SE 1006). And as to cases involving bad faith under Code § 20-1404, where any such relationship between the defendant's bad faith and the amount of damages the plaintiff has proved in relation to what he has asked will generally be purely coincidental, we find the rule totally insupportable.

Code § 20-1404 contains no such restrictions on the award of attorney fees and expenses of litigation for bad faith. We therefore expressly overrule that portion of any case from this court which applies the rule to circumstances governed by Code § 20-1404 (such as *Southern Bell Tel. &c. Co. v. Citizens &c. Realty Co.,* supra; *Broyles v. Johnson,* supra; *Simonton Const. Co. v. Pope,* 95 Ga. App. 211 (97 SE2d 590) (revd. on other grounds); *Crump v. Ojay Spread Co.,* 87 Ga. App. 250 (73 SE2d 331); and *Schafer Baking Co. v. Greenberg,* supra; and cits.); and we hold that, since the evidence authorized a finding of bad faith on the part of the appellant, the jury was authorized to award attorney fees pursuant to Code § 20-1404, even though it awarded less in damages than the plaintiff had claimed.

We recognize that the Supreme Court held, in *General Refractories Co. v. Rogers,* 240 Ga. 228, 235 (239 SE2d 795), that "[g]reat disparity between demand and

verdict alone *may* defeat an award of attorney fees under Code Ann. § 20-1404 when bottomed on a stubbornly litigious theory." (Emphasis supplied.) We see no inconsistency between that holding and what we hold here. In *General Refractories,* the Supreme Court held as a matter of law that there was no bad faith so as to justify an attorney fee award under Code § 20-1404; it then turned its attention to whether the defendant had been stubbornly litigious, and in that connection pointed out that mere refusal to pay without suit is not stubborn litigiousness.

The ground of stubborn litigiousness under Code § 20-1404 is somewhat akin to a claim for attorney fees under the insurance statute (Code Ann. § 56-1206), in that the gist of each is the defendant's stubborn refusal to pay a claim as to which there is no genuine dispute or bona fide controversy (under Code § 56-1206, see *Ga. Farm Bureau Mut. Ins. Co. v. Calhoun,* 127 Ga. App. 213, 215 (193 SE2d 35); under Code § 20-1404, see *Buffalo Cab Co. v. Williams,* 126 Ga. App. 522, 524 (191 SE2d 317)). In each instance, a jury verdict awarding disparately less than the plaintiff claimed *may be an indication* that there was a bona fide controversy or dispute, at least as to the *amount* of liability, and that therefore the defendant's stubbornness was warranted (but see this holding, concerning insurance cases under Code § 56-1206, generally). Therefore, we think that it is not the *disparity* between verdict and demand which may defeat attorney fees when bottomed on stubborn litigiousness; but what may defeat the award is what the disparity in verdict and demand indicates, which is the fact that there was a *bona fide controversy* at least as to the amount of liability. Therefore, to avoid confusion such as we are here attempting to dispel, the question of whether attorney fees are authorized for stubborn litigiousness should focus on whether defendant's resistance of the claim was bottomed *on a bona fide controversy or dispute,* since the absence of such is the essence of the attorney fee award for stubborn litigiousness. *Tift v. Towns,* 63 Ga. 237, 242; *Buffalo Cab Co. v. Williams,* supra; and see *Woodson v. Burton,* 241 Ga. 130, 131-132 (243 SE2d 885). We can perceive that there may be cases wherein there is a bona

fide controversy and the plaintiff has insisted on far more damages than he was finally determined to be worth, and yet the defendant, despite the fact that there is genuine controversy, has still been guilty of "wanton or excessive indulgence in litigation" beyond that demanded by the nature of the controversy (*Tift,* supra), or the defendant may have treated the claim or conducted the litigation itself in bad faith (see *Delta Air Lines v. Isaacs,* 141 Ga. App. 209, 210-211 (2) (233 SE2d 212)). In such a case, although there may indeed be "great disparity in the verdict and demand" (*General Refractories,* supra), which would certainly indicate that there had been a bona fide controversy at least as to the amount of liability, the defendant may still have been stubbornly litigious within the meaning of Code § 20-1404 (*Tift,* supra; *Buffalo Cab Co.,* supra, p. 524). The defendant may, for example, have expended much cantankerous, unnecessary litigation on a *denial* of liability as to which there is found to have been no real dispute or bona fide controversy, as further evidenced by the fact that at trial he admits liability and challenges only the *amount* of liability (see *Delta Air Lines v. Isaacs,* supra; in which case, plaintiff recovered one-third less than he demanded; and see *Central Mfgrs. Mut. Ins. Co. v. Graham,* 24 Ga. App. 199 (4), supra).

In *General Refractories,* the great disparity in verdict and demand indicated (and lent additional proof) that there was a bona fide controversy at least as to the amount of liability, and there was apparently no evidence of stubborn litigiousness as to any other aspect of the defense. We do not think there is any conflict with that case in our overruling of those Court of Appeals cases which hold that in cases under Code § 20-1404, where the amount of defendant's liability is substantially less than the amount sued for, a finding of attorney fees is unauthorized; nor any conflict in our holding that where there is actual bad faith or stubborn litigiousness in the evidence, attorney fees are authorized under Code § 20-1404, regardless of the amount of the recovery.

3. In enumerations of error 8, 9, and 12, appellant contends that the court erred in charging the jury as to constructive fraud, appellant's duty to inspect, and the concealment of intrinsic qualities of the brick; and in

denying appellant's motion for new trial on those grounds. The burden is on the appellant to show error affirmatively by the record, and further, to show that it is harmful. *Summerfield v. DeCinque,* 143 Ga. App. 351, 354 (238 SE2d 712); *McKenzey v. State,* 127 Ga. App. 304, 305 (193 SE2d 226). Appellant does not persuade us that there was any error in the court's charge which would require a new trial.

Even if the charge on constructive fraud was inapplicable in this case because, as appellant argues, the plaintiffs-appellees claimed only actual fraud and therefore must be held to prove actual fraud, the court's charge as a whole did instruct the jury that to award damages for fraud to the plaintiff, defendant's actions must have involved actionable moral guilt. The charge therefore did not require the grant of a new trial. *Battle v. Williford,* 160 Ga. 287, 288 (4) (127 SE 762).

The evidence that the bricks from the two separate "runs" and two different "ranges" were in fact inherently different in color and, inferrably, would always be so (and, as trial exhibits show, still are), and further that the difference was not apparent until the bricks were laid in the wall and contrasted against each other, while the appellant's sales manager assured appellees that the colors would match when the brick dried, was evidence authorizing a charge on concealment of intrinsic qualities. "Concealment of material facts may amount to fraud when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover." *Batey v. Stone,* 127 Ga. App. 81, 82 (192 SE2d 528). This was the exact instruction given, and it was not error.

The trial court charged that if the jury found the appellant undertook to inspect the bricks in appellees' house, it had a duty to appellees to perform this inspection in a non-negligent manner. We find this statement to be the law, and fully authorized by the evidence.

4. Appellant contends that the trial court erred in charging that the measure of damages would be the cost of restoration, in lieu of charging that the measure was the difference between the value of the home if the brick had

matched and the value of the home with bricks that did not match. Where the damage claimed is solely to the building or structure, and not to the land, the measure of damages is the cost of restoration. The only exception is where such restoration would be "an absurd undertaking," *Neda Const. Co. v. Jenkins,* 137 Ga. App. 344, 349-350 (223 SE2d 732). Evidence in this case described restoration, or replacement of the brick, as the reasonable remedy and not an absurd undertaking; the cost of such restoration was testified to, and we find that to be an entirely appropriate measure of damages in this case. As to appellant's remaining enumeration of error, under the evidence, there was no harmful error in permitting the contractor to testify as to the cost of restoring the brick on today's market rather than at the time of the damage in April, 1977. The figure given by the contractor as the cost of restoration at the time of trial was $9,000. An expert witness testified that restoration at the time of damage in April, 1977, would have cost $12,000. Since the jury would have been authorized to award $12,000, we cannot see that the contractor's testimony was harmful.

*Judgment affirmed. Deen, C. J., Quillian, P. J., McMurray, P. J., Shulman, Banke and Sognier, JJ., concur. Smith and Carley, JJ., concur in the judgment only.*

ARGUED SEPTEMBER 10, 1979 — DECIDED MARCH 6, 1980 —

*John B. Long,* for appellant.
*Thomas W. Tucker,* for appellees.