A90A2366, A90A2367. DELOITTE, HASKINS & SELLS v.
GREEN; and vice versa.

(403 SE2d 818)

BIRDSONG, Presiding Judge.

Frank W. Green brought suit against Deloitte, Haskins & Sells (DHS), an accounting firm, contending DHS had rendered negligent

tax advice to Green and the Breneman Company, of which Green is the successor in interest. Green contends DHS's advice resulted in Mr. Green's selling the Breneman Company and thereby incurring $653,200 in unanticipated taxes paid on the "recapture" of bargain inventory profits plus interest and penalties, for a total of $781,530.

Mr. Green personally paid this tax assessment. In his suit, Green asserted both negligence and breach of professional contract. He contended he would not have sold the company if he had been advised that he would have to "recapture" $1.8 million in bargain inventory profits which he had achieved when he himself bought the company's $4.4 million worth of inventory for only $2,345,000 two years earlier, and which profits he had deferred successfully by using a "last-in, first-out" method of accounting while he operated the company at a profit. He also sought compensation for $264,000 in termination bonuses paid in connection with the sale, and for $800,000 in salary he himself would have earned over a five-year period if he had not sold the company pursuant to DHS's negligent advice.

Following a nine-day trial, the jury rendered a verdict for Green for $625,224 in compensatory damages and $155,501.20 in attorney fees. DHS appeals the verdict; Green in his cross-appeal complains of the refusal to admit certain evidence. *Held*:

1. DHS contends the trial court erred in denying its motions for directed verdict and judgment n.o.v., made on grounds that the company, by paying lawful tax liability on genuine profits, had not suffered a compensable damage caused by DHS; and that Green showed no evidence from which any cognizable damage could be ascertained.

DHS contends the company justly owed the tax based on a "recapture" of bargain inventory profits by sale. While this assertion, standing alone, appears to be correct, DHS' argument overlooks the evidence of Mr. Green's testimony that he would not have sold the business if DHS had not informed him liability for taxes for the "recapture" of bargain inventory profits would only be about $30,000, not $650,000 in tax liability that was finally assessed. Evidence showed that Green had specifically asked DHS for advice on tax liability in connection with a proposed sale and that DHS, having been directly involved in the accounting of the company affairs since Green had bought the company, had full knowledge of the balance of the bargain inventory profits; and that only after the sale did DHS advise the company's financial officer that DHS had made an error in failing to calculate the "recapture" of the bargain inventory profits.

There was ample evidence, including by DHS' own experts, that in these circumstances, DHS' failure to recognize and inform Green of the necessity of "recapturing" these bargain inventory profits in the sale, was negligent. DHS argues extensively that its employees were not asked to calculate the bargain inventory profits matter and did

not calculate it, rather that the company's own financial officer undertook to calculate that point of liability, but it is clear the jury found in favor of Mr. Green on this point, and found that DHS was requested to calculate the tax liability for the company before Mr. Green made his decision as to whether to sell the business and to pay out $264,000 in termination bonuses. There is ample evidence in the record to support a finding that the position of DHS in the conduct of the company's accounting affairs was such that DHS was expected to and did undertake to calculate the tax liability owing on a sale, and calculated it negligently.

The damages awarded to Green were compensation for DHS' negligent advice that the company would owe a certain tax, which advice Green relied upon in deciding to sell the business and but for which he would not have sold it. The evidence supported a finding that if the correct advice had been given, Mr. Green would have continued to run the business as he theretofore had done and *would not have incurred this tax by selling the company.* The verdict was thus clearly not for the tax he lawfully paid, but for his loss in having sold the business with unanticipated tax consequences. It is therefore misleading for DHS to assert that the verdict was for a lawful tax liability and that there is "no damage."

The contention that Mr. Green did not show evidence from which any damages could be calculated, i.e., that he did not show he would have continued to operate the business at a profit, is clearly without merit. There was evidence that before Green bought the company it had been operated at a loss but he had "turned it around" from the position of loss to one of profit. The jury could find from the evidence that Green had operated the business successfully and that he would have continued to do so; this is not mere speculation, but is based on the "track record" in evidence. The attempt by DHS to show that, according to some view of the evidence Green's operation of the business might not have been successful, is disputed by Green; under a view of the evidence favorable to the verdict, the jury could and evidently did find otherwise.

It is DHS who "speculates" when it asserts that the company would *not* have continued to operate successfully; DHS cannot even suggest how much the company would have incurred in taxes attributable to inventory if it had stayed in business. DHS argues that the company "showed no damage" because it ultimately would have had to recognize these profits during operation and could not have escaped a tax upon them. However, the evidence showed Mr. Green's plan and practice had been to maintain each year an on-going reduction in inventory levels and recognize a portion of the LIFO reserves each year; by doing so, the company would not pay the same tax amount as it did by recognizing the entire $1.4 million inventory prof-

its in this sale. The evidence supports a finding that the liability incurred on this sale was unique to the sale, and was not offset by any other taxes the company might have had to pay if it had continued in operation. In any case, the evidence supports a finding that Green would not have sold the business but for DHS' negligent advice, and would not have incurred a tax for recapturing inventory profits upon a sale.

A directed verdict is not authorized unless the evidence and all reasonable deductions therefrom *demand* a certain verdict. OCGA § 9-11-50; *Crosby Aeromarine v. Hyde*, 115 Ga. App. 836 (156 SE2d 106). And, where a directed verdict was denied and the jury has made a certain ruling, the evidence is to be construed in favor of the jury's finding and in favor of the non-movant, and a trial court cannot substitute its judgment for the jury's if there is "any evidence" to support it. *Pendley v. Pendley*, 251 Ga. 30 (302 SE2d 554); *Davis v. Glaze*, 182 Ga. App. 18 (354 SE2d 845); *Johnson v. Curenton*, 127 Ga. App. 687 (195 SE2d 279).

2. In view of our ruling in Division 1, it is not necessary to find that the second allegation of negligence and negligent breach of contract is sustained by the evidence. Green showed evidence that in the sale itself, the entire inventory recapture tax liability could have been avoided if DHS had not negligently allocated to the sale price more than $3 million dollars in inventory value, versus only $675,000 in equipment. Green argued that the net book value of the equipment was in fact more than $1.8 million, so that this amount of purchase price could have been shifted from the inventory to the total equipment value, without challenge by the IRS, and the entire LIFO inventory recapture tax would be avoided. Although DHS hints that the $1.8 million LIFO inventory on hand had to be recognized in the sale and that it could not be hidden or shifted, nevertheless DHS does not make it clear on appeal, or by evidence in the record, that this amount of inventory value could not have been properly allocated to equipment thus avoiding the inventory recapture element. The evidence appears to support a finding that such an allocation could successfully have been made and the LIFO recapture tax could thus be avoided. It is necessary that DHS show error by the record, and assertions on appeal in the brief cannot satisfy this duty. *Denny v. Nutt*, 189 Ga. App. 387 (375 SE2d 878). DHS not having clearly shown any error in such a finding on the evidence, or error raised by legal objection made below, we are authorized to find by this record that the jury could find DHS negligent on this point.

3. The trial court did not err in refusing to charge the jury on principles of comparative negligence as to the count for breach of contract. The plaintiff's duty of care in a negligence action is inapplicable to a breach of contract action, for an allegation of "negligent breach

of contract" is founded upon a particular contractual duty which a defendant owes regardless of the plaintiff's actions.

Where a particular contractual duty is owed, the plaintiff's want of diligence does not affect the defendant's contract duty. See *Simmerson v. Blanks*, 149 Ga. App. 478, 480 (254 SE2d 716). This must be the rule; there would be no such thing as a contractual duty if the defendant could avoid it entirely simply by saying the plaintiff did some other thing or did nothing. The correct principle is: "Where by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence." OCGA § 13-6-5. This statutory principle recognizes intact a defendant's contractual duty whenever one exists, while requiring the plaintiff to mitigate what damage he can by ordinary care. See *Norris v. Johnson*, 209 Ga. 293, 297 (71 SE2d 540). The point of proceeding, where appropriate, upon both a count of negligence and a count of negligent breach of contract is seen clearly in this case, where DHS undertook by contract to provide tax advice, but claimed at trial that it actually did not give advice to the company as to specific calculations of the inventory "recapture" element and the allocation of sale price to inventory and equipment, but rather that the company's financial officer told agents of DHS he would do these things. In addition to finding simple negligence by finding that *if* DHS gave this advice it gave incorrect advice, the jury could find that DHS by contract had a *duty to provide* the specific correct advice which it later claimed to have allowed the company's employee to do. Thus, having a contractual duty to provide expert tax advice, DHS cannot later avoid liability simply by saying it never provided any advice on the particular matter of complaint, i.e., that it was not negligent.

Where the trial court charges, as it did in this case, that to find the defendant liable for breach of contract it must find the defendant *caused* or *solely caused* the damage incurred by the plaintiff, and that the plaintiff had a duty to mitigate damages, the appropriate duties of the respective parties are left intact, and the charge is correct.

4. The trial court did not err in letting the issues of attorney fees go to the jury. The determination whether a defendant has acted in bad faith or has been stubbornly litigious or caused unnecessary litigation and expense where there was no bona fide controversy, so as to authorize attorney fees pursuant to OCGA § 13-6-11, are questions generally left to the jury (*Spring Lake &c. Assn. v. Peacock*, 260 Ga. 80, 81 (390 SE2d 31)); where there is any evidence to support an award we are not authorized to disturb it. DHS in this case denied having given any advice as to the particular matters asserted by plaintiff, while at trial DHS' agents conceded that if they had given any such advice, they did so negligently; the jury could at least conclude that DHS had a contract duty to advise as to the company's tax

liability for "recapture" of inventory profits and/or as to allocation of sale price between inventory and equipment, and responded in bad faith by claiming it had no liability because it failed to give any advice at all. The jury could also find that there was no bona fide dispute as to DHS' liability either for failing to give advice or for negligently giving incorrect advice. *Powell v. Watson*, 190 Ga. App. 375 (378 SE2d 867); *Georgia-Carolina Brick &c. Co. v. Brown*, 153 Ga. App. 747, 750-754 (266 SE2d 531).

We find no merit in any ground raised on appeal by DHS and therefore find no ground upon which a new trial should be had; consequently, the evidentiary issue raised in Green's cross-appeal is moot.

*Judgment affirmed in Case No. A90A2366. Appeal dismissed in Case No. A90A2367. Banke, P. J., and Cooper, J., concur.*

### ON MOTION FOR REHEARING.

DHS asserts that owing to the "complex and unpopular" nature of federal tax laws, this court has failed to apply them properly. In reality, DHS is invoking the "complexity" of the tax laws to obscure the issues of the case.

Appellant misstates our opinion by asserting that we concluded "that [lawful] taxes could properly be recovered as damages in this case. . . ." DHS has repeatedly injected this element of confusion in the case. We have made it clear that the company lawfully owed the tax. The tax amount, however, was based on DHS' negligent (so the verdict found) allocation of sale price to $3 million to inventory versus only $675,000 to equipment. The award, moreover, is "compensation for DHS' negligent advice that the company would owe a certain tax [$30,000] which advice Green relied upon in deciding to sell the business and but for which he would not have sold it," and, "[t]he verdict was thus clearly not for the tax he lawfully paid, but for his loss in having sold the business with unanticipated tax consequences." The award ($625,224) is obviously not a recovery of the lawful tax ($653,200); it is well within the claims for damages, including $264,000 in termination bonuses and $800,000 salary which Green gave up.

Appellant insists it is "irrefutable" that "as a matter of law" the company would ultimately have paid the same tax if it had not been sold. But Green's evidence showed $653,200 in tax would not have been assessed if DHS had made a reasonable allocation to sale price of inventory and equipment. Moreover, while bargain purchase inventory profits obviously would have to be *recognized* for tax purposes if the company was not sold, the tax basis would "irrefutably" be different if the company continued to operate successfully and defer the profits as it had done; on a different tax basis, a $653,200 tax would

not necessarily have to be paid.
*Motion for rehearing denied.*

DECIDED FEBRUARY 13, 1991 —
REHEARING DENIED MARCH 6, 1991 —

*Sutherland, Asbill & Brennan, John A. Chandler, John W. Bonds, Jr., Elizabeth V. Tanis,* for appellant.

*Kidd & Vaughan, Charles M. Kidd, David N. Schaeffer,* for appellee.