A03A1866, A03A1867. NATIONAL GYPSUM OF GEORGIA v. PLOOF CARRIERS CORPORATION; and vice versa.
(597 SE2d 597)

BARNES, Judge.

National Gypsum of Georgia ("National Gypsum") appeals from the trial court's order granting partial summary judgment to Ploof Carriers Corporation ("Ploof") in this indemnity case arising out of an injury to a Ploof employee while working on National Gypsum's premises. Ploof also appeals the trial court's partial denial of its summary judgment motion and we consolidated these appeals for decision. For reasons that follow, we affirm in part and reverse in part in Case No. A03A1866, and affirm in Case No. A03A1867.

The record shows that National Gypsum manufactures wallboard and used the services of Ploof, a trucking company, to deliver wallboard to its customers. The contract between National Gypsum and Ploof contained the following indemnity clause:

> [Ploof] shall be solely responsible for and agrees to indemnify, defend and hold [National Gypsum] harmless from any claims, demands, damages, costs, attorney's fees, expenses and legal proceedings of any type for injury to, the death of, or damage to the property of, *any employee,* contractor, or agent of [Ploof] who performs any work for [Ploof] pursuant to this agreement, whether such injury, death or damage occurs on [National Gypsum's] property or anywhere else, and *even if such injury, death or damage is claimed to have been caused by [National Gypsum's] acts or omissions*; provided that nothing herein shall require [Ploof] to be responsible to indemnify [National Gypsum] for the amount of any final judgment in which it has been found that such injury, death or loss or damage to property was caused solely by [National Gypsum's] negligence.

(Emphasis supplied.) After Eugene Johnson, a Ploof employee, tripped and fell on National Gypsum's loading dock while covering a load of National Gypsum's wallboard with a tarp, he sued National Gypsum seeking damages for his injuries. National Gypsum filed a third-party complaint against Ploof, seeking indemnity and attorney fees. In its answer to Johnson's complaint and in its third-party complaint

against Ploof, National Gypsum asserts that Johnson's negligence contributed to his injuries.

Ploof moved for partial summary judgment on National Gypsum's claims for indemnity and attorney fees,[1] asserting that National Gypsum was not entitled to immunity unless it demonstrated negligence on the part of Ploof apart from any failure of Johnson to exercise ordinary care for his own safety. National Gypsum opposed the summary judgment motion by pointing to Johnson's deposition testimony that the object on which he tripped might have been covered up with a tarp, that Johnson had rolled out the tarp to cover the load of wallboard, and that Johnson was aware that these objects could be left on the floor of the loading dock. National Gypsum also amended it complaint to assert a claim that Ploof was negligent because it was Ploof's responsibility to train its employees to (1) watch where they walked, and (2) clear the area where they roll out tarps if they anticipate walking over the tarp. In support of this claimed negligence, National Gypsum submitted the affidavit of its Safety Director, Paul Hermann. In his affidavit, Hermann explained that Ploof's employees were responsible for unrolling, positioning and securing tarps and that Ploof, not National Gypsum, had the responsibility for training Ploof's employees. Hermann concluded that this training

> should include training to ensure that [Ploof's] employees are active in their approach to safety, meaning in general paying attention to the area where they work, observing anything that might be considered a safety hazard, being aware of the materials used in the loading process, and observing common sense safety cautions such as paying attention to where they walk.

Finally, Hermann averred:

> If Mr. Johnson was someone who needed to be trained to watch where he walked, then such training was Ploof's responsibility. If Mr. Johnson was someone who needed to be trained to watch what he covered up with the tarp that he rolled out, then such training was Ploof's responsibility.

The trial court granted partial summary judgment to Ploof on National Gypsum's negligent training claim because Hermann's

---

[1] National Gypsum's breach of contract claim based upon Ploof's failure to include it as an additional insured on its liability insurance policy remains pending below.

affidavit was conclusory and not supported by the record. It denied Ploof's request for summary judgment with regard to its contractual obligation to defend. In its written order, the trial court did not expressly address Ploof's request for summary judgment on its obligation to indemnify National Gypsum. Based on our review of the trial court's order, which purports to address Ploof's entire summary judgment motion, we conclude that the trial court granted this portion of Ploof's motion. In their briefs before this court, National Gypsum and Ploof reached the same conclusion.

## Case No. A03A1866

1. National Gypsum contends the trial court erred when it granted partial summary judgment to Ploof on its indemnity obligation because it submitted adequate proof of Ploof's negligence. We agree that the trial court erred, but not for this reason. The resolution of Ploof's obligation to indemnify does not turn on whether Ploof was negligent; instead, it hinges on whether National Gypsum was solely negligent. *Stafford Enterprises v. American Cyanamid Co.*, 164 Ga. App. 646 (297 SE2d 307) (1982).

The confusion of the parties and trial court about the proper standard to evaluate Ploof's indemnity obligation results, understandably, from their reliance on our opinion in *Proctor & Gamble Paper Products Co. v. Yeargin Constr. Co.*, 196 Ga. App. 216 (396 SE2d 38) (1990), which is erroneous and directly contradicts our previous opinion in *Stafford Enterprises,* supra. Both *Proctor & Gamble* and *Stafford* addressed nearly identical indemnity clauses that are also very similar to the one before us now.

In *Stafford*, supra, American Cyanamid and Stafford Enterprises entered into a contract in which Stafford performed work on the premises of American Cyanamid. The contract contained the following indemnity provision:

CONTRACTOR [Stafford] shall be liable for and protect, defend, indemnify and save CYANAMID . . . harmless against any and all claims . . . suffered by the parties hereto and/or their employees . . . on account of personal injuries or death, or damages to property occurring, growing out of, incident to, or resulting directly or indirectly from the performance by CONTRACTOR [Stafford] hereunder, whether such loss, damage, injury or liability is contributed to by the negligence of CYANAMID or its employees . . . ; except that CONTRACTOR [Stafford] shall have no liability for damages or the costs incident thereto caused by the sole negligence of CYANAMID.

(Punctuation omitted.) 164 Ga. App. at 648-649. After one of Stafford's employees fell from a scaffold and died on Cyanamid's premises, his widow sued Cyanamid; Cyanamid sought indemnity for the claim from Stafford. The case was tried and the jury returned a special verdict, finding that the employee's negligence amounted to 27.5 percent and that the remainder rested with Cyanamid.

Stafford asserted that it did not owe indemnity to Cyanamid because the evidence failed to show Stafford was negligent. We rejected this argument, finding that "the vital factor which would prevent Cyanamid from recovery, under the terms of the agreement, would be if [the employee's] death were due to Cyanamid's sole negligence." 164 Ga. App. at 649. Since the jury's verdict showed comparative negligence on the employee's part, we held that Cyanamid was not solely negligent and was therefore entitled to indemnity. Id.

In *Proctor & Gamble*, the indemnity clause was very similar to the one at issue in *Stafford*, supra, and provided:

> Seller [Yeargin] agrees to protect, defend, indemnify and save Buyer [P&G] harmless from any and all . . . claims on account of personal injury, . . . which may be sustained by . . . its employees . . . arising out of or in connection with work done whether such loss, damage, injury or liability is contributed to by the negligence of Buyer [P&G] or its employees (except that this indemnity shall not apply to damages, injuries, or the costs incident thereto found to be caused by the sole negligence of Buyer [P&G]). . . .

(Punctuation and emphasis omitted.) 196 Ga. App. at 216. After Yeargin's employee sued Proctor & Gamble, the company asserted the employee's contributory negligence as a defense and sought indemnity from Yeargin. In a rather cryptic analysis, a panel of this Court held that Proctor & Gamble was not entitled to indemnity, relying on the following statement in *Binswanger Glass Co. v. Beers Constr. Co.*, 141 Ga. App. 715, 719 (6) (234 SE2d 363) (1977):

> If only contributory negligence on the part of the employee [of the indemnitor] . . . is shown and no showing is made that the employer [indemnitor] is negligent in any other way, then the contract may not be construed in such a manner as to indemnify the [indemnitee] for its own acts of negligence.

(Citations and punctuation omitted.) 196 Ga. App. at 218 (2). The panel did not compare the indemnity clause before it with the one at issue in *Binswanger,* supra, which would have revealed a crucial distinction.

In *Binswanger,* the indemnity provision required that the injury be caused by the negligence of the indemnitor or those under its control (141 Ga. App. at 716, n. 1); the clause at issue in *Proctor & Gamble* contained no such requirement. Thus, the issue in *Binswanger* — whether the contributory negligence of an employee alone was sufficient to trigger the employer's obligation to indemnify — was *not* relevant to the panel's analysis in *Proctor & Gamble.* We recognized this crucial distinction in *Stafford,* supra, and rejected the indemnitor's argument that *Binswanger* demanded a finding of negligence on its part before it was obligated to indemnify the indemnitee. 164 Ga. App. at 648-649.

Because our holding in *Proctor & Gamble,* supra — that the indemnitee must show negligence on the part of the indemnitor — was erroneous based on the specific indemnity language at issue in that case, we must overrule it.

2. The indemnity clause between National Gypsum and Ploof does not turn on whether Ploof was somehow negligent; instead, as in *Stafford,* supra, it hinges on whether Johnson's injury resulted from National Gypsum's sole negligence. As National Gypsum submitted evidence creating a genuine issue of material fact as to whether Johnson failed to exercise ordinary care for his own safety, the trial court erred when it granted partial summary judgment to Ploof on National Gypsum's claim for indemnity.

3. The trial court did not err in granting partial summary judgment to Ploof on National Gypsum's claim that Ploof negligently trained Johnson. The affidavit of National Gypsum's safety manager was not based upon any personal knowledge of Ploof's training program. It does not establish that Ploof failed to adequately train Johnson; instead, it contains mere conclusions that Johnson should have been trained. "Allegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment." (Citation and punctuation omitted.) *Johnson v. MARTA,* 230 Ga. App. 105, 107 (1) (495 SE2d 583) (1998).

### Case No. A03A1867

4. For the reasons stated in Divisions 1 and 2 of Case No. A03A1866, the trial court did not err by denying partial summary judgment to Ploof on National Gypsum's claim for a defense.

*Judgment affirmed in part and reversed in part in Case No. A03A1866. Judgment affirmed in Case No. A03A1867. Smith, C. J.,*

*Andrews, P. J., Johnson, P. J., Blackburn, P. J., Ruffin, P. J., Eldridge, Miller, Ellington, Phipps, Mikell and Adams, JJ., concur.*

DECIDED MARCH 25, 2004 —

*Callaway, Braun, Riddle & Hughes, R. Kran Riddle*, for appellant.

*Brannen, Searcy & Smith, Jordon D. Morrow, Kimberly C. Harris*, for appellee.