## A06A2266. LAWYERS TITLE INSURANCE CORPORATION v. NEW FREEDOM MORTGAGE CORPORATION.
(645 SE2d 536)

BERNES, Judge.

A Fulton County jury found in favor of New Freedom Mortgage Corporation on its contractual indemnification claim against Lawyers Title Insurance Corporation. Lawyers Title appeals, contending that a new trial is necessary because the trial court gave erroneous jury instructions on misrepresentation and concealment, causation, and confidential relationships. Lawyers Title further contends that the trial court erroneously granted in part New Freedom's motion in limine preventing Lawyers Title from introducing certain causation evidence. Because the jury instruction on misrepresentation and concealment was legally erroneous and harmful, we conclude that Lawyers Title is entitled to a new trial.

The record reflects that New Freedom is a residential mortgage lender, whereas Lawyers Title is in the business of issuing title insurance policies to residential home buyers and lenders. In an effort to induce New Freedom to purchase title insurance, Lawyers Title issued to New Freedom an indemnification agreement known in the insurance industry as a "closing protection letter" ("CPL").

Under the CPL, Lawyers Title agreed to indemnify New Freedom under certain circumstances for actual losses New Freedom incurred in connection with residential real estate closings conducted by an agent authorized to issue title insurance on behalf of Lawyers Title (an "issuing agent"). Among other things, the CPL provided that Lawyers Title would reimburse New Freedom when its actual loss "arises out of" (1) the issuing agent's failure to follow New Freedom's written closing instructions relating to the collection and payment of funds due to New Freedom, or (2) the issuing agent's "[f]raud or dishonesty . . . in handling [New Freedom's] funds or documents in connection with such closings."

The instant dispute over the terms of the CPL relates to a residential mortgage closing that occurred on July 14, 2000 in which New Freedom made a $216,000 loan to Shelton Goode secured by real property located in Atlanta. In connection with the closing, Lawyers Title issued a lender's title insurance policy to New Freedom. The issuing agent for the title insurance policy and closing attorney for the transaction was Michael Brochstein and his law firm, Brochstein, Bantley & Babcock. The parties agree that the CPL was in effect and binding at the time of the closing, and that Brochstein's client was New Freedom under Georgia real estate law.

The HUD-1 settlement statement transmitted to New Freedom as part of the closing reflected that the residential property had been appraised at $240,000 and that the buyer Goode was contributing $25,640.06 of his personal funds toward the purchase. However, construed in favor of the verdict, the evidence adduced at trial reflects that the sale of the property was a sham transaction involving a straw purchaser and an inflated property appraisal. In the months after the sale, no payments were made on the loan, resulting in the foreclosure and sale of the property for significantly less than the appraised value. In total, New Freedom incurred losses in the amount of $54,922.30. After the parties were unable to resolve their dispute over coverage, New Freedom commenced the present action against Lawyers Title seeking reimbursement for its losses under the CPL.

The central issue at trial was whether Brochstein participated in the mortgage fraud scam perpetrated against New Freedom, such that his conduct as an issuing agent for Lawyers Title entitled New Freedom to indemnification under the CPL. In this regard, New Freedom presented evidence that Brochstein disregarded the written

closing instructions provided to him by New Freedom and acted fraudulently and dishonestly in handling New Freedom's funds and documents in connection with the closing. Accordingly, New Freedom argued that its losses were reimbursable under the CPL because they arose both out of Brochstein's failure to follow New Freedom's closing instructions and his fraud and dishonesty.

In rebuttal, Lawyers Title relied on the testimony of Brochstein, who denied that he knew about or participated in the mortgage fraud scam or that he had failed to follow the closing instructions as written. The trial court also permitted Lawyers Title to argue and present evidence that New Freedom's *sole* negligence caused New Freedom's loss, but ruled that Lawyers Title could not argue or introduce evidence that the loss was caused *in part* by the contributory negligence of New Freedom or other third parties. This was based on the trial court's ruling that, pursuant to the terms of the CPL and Georgia indemnity law, New Freedom only had to show a slight causal connection between New Freedom's loss and Brochstein's alleged fraud, dishonesty, or failure to follow the written closing instructions in order to obtain full reimbursement.

At the conclusion of the trial, the trial court charged the jury with numerous separate instructions, including instructions reflecting its rulings on the causation issue, as well as instructions pertaining to fiduciary duty and misrepresentation and concealment. Lawyers Title objected to these charges after the trial court gave them. The jury subsequently returned a verdict in favor of New Freedom.

1. Lawyers Title argues that the trial court's instruction on misrepresentation and concealment was improper. In order for a trial court's jury instruction to constitute reversible error, the party challenging the instruction must establish that the instruction was both legally erroneous and harmful. See *Buford-Clairmont Co. v. RadioShack Corp.*, 275 Ga. App. 802, 806 (4) (622 SE2d 14) (2005). In determining whether this burden has been met, this Court looks at the jury charge as a whole "to decide whether the law given in the disputed charge was adequately explained by other portions of the trial court's instruction." *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 227 (1) (547 SE2d 637) (2001).

With these principles in mind, we turn to the trial court's charge on misrepresentation and concealment. At New Freedom's request, the trial court charged the jury:

> I'm now going to charge you on misrepresentation and concealment.

> *Misrepresentation of a material fact, if acted on by the opposite party, constitutes legal fraud, whether misrepresentation was intentional or not.*
>
> If there is a willful misrepresentation of a material fact which was made to induce another to act and causes that person to act and the person is injured, then the person who was injured has the right of action. Mere concealment of a fact, unless it is done to deceive and mislead, will not support an action.
>
> In all cases of deceit, knowledge of the falsehood constitutes an essential element. However, fraudulent or reckless misrepresentation of facts as true which the party may not know to be false, if intended to deceive, is equivalent to knowledge of a falsehood.

(Emphasis supplied.)

Lawyers Title contends that the trial court's instruction provided an inaccurate statement of the law under the circumstances of this case and misled and confused the jury, since the charge stated that fraud could be established without proof of fraudulent intent. We agree.

The emphasized portion of the charge is drawn from a pattern jury instruction and accurately states an abstract principle of Georgia law, given that Georgia recognizes the concept of constructive fraud. See Suggested Pattern Jury Instructions, Vol. I: § 26.040 (4th ed. 2004). See OCGA § 23-2-52; *Johnson Realty v. Hand,* 189 Ga. App. 706, 711 (7) (377 SE2d 176) (1988). Constructive fraud, in contrast to actual fraud, does not require a finding of an intent to deceive. See *Johnson Realty,* 189 Ga. App. at 711 (7); *Alford v. Oliver,* 169 Ga. App. 865, 866-867 (2) (315 SE2d 299) (1984).

However, in light of the language of the CPL, the concept of constructive fraud was not applicable in this case. The CPL indemnified New Freedom against the issuing agent's "[f]raud or dishonesty," and we read this language to require a showing of an intent to deceive. See *Ga. Real Estate Comm. v. James,* 152 Ga. App. 193, 196 (262 SE2d 531) (1979) (holding that "substantial misrepresentation" and "dishonest dealings" require a finding of an intention to mislead); *Hurt & Quin, Inc. v. St. Malyon,* 85 Ga. App. 164, 171 (2) (68 SE2d 213) (1951) ("Dishonesty certainly carries with it the idea of a wilful wrong.") (citation and punctuation omitted). Indeed, New Freedom does not dispute on appeal this interpretation of the contractual language. Accordingly, we conclude that the emphasized portion of the trial court's charge — by stating that a finding of intent was not

necessary to establish fraud — was not tailored to the law and evidence applicable here.

Nevertheless, New Freedom argues that considering the trial court's charge as a whole, the jury was correctly instructed. In this regard, New Freedom emphasizes that the second and third paragraphs of the trial court's misrepresentation and concealment charge were correct statements of the law applicable in this case. New Freedom also points to another portion of a separate charge on "fraud and deceit" in which the trial court properly instructed the jury that "A person commits fraud when that person makes a misrepresentation that is intended to deceive and does deceive" and that the elements of fraud include an "intent to deceive" and an "intention to induce the plaintiff to act or refrain from acting in reliance on the false . . . representation." Lastly, New Freedom calls attention to the fact that at another point, the trial court instructed the jury that "[I]n order to find either fraud or dishonesty by Michael Brochstein or his firm, you must find an intent to deceive and knowledge of the . . . falsehood." In light of these correct charges, New Freedom argues that, when taken as a whole, the trial court's charge to the jury made clear that New Freedom was required to prove that Brochstein acted with fraudulent intent in order to recover on its indemnification claim.

We disagree. "An erroneous and injurious instruction is not cured by a correct statement of law in another part of the charge to the jury wherein the incorrect charge is not expressly withdrawn from the jury's consideration and their attention directed thereto." (Citations omitted.) *Sturdivant v. Polk*, 140 Ga. App. 152, 154 (3) (230 SE2d 115) (1976). See also *Valdosta Housing Auth. v. Finnessee*, 160 Ga. App. 552, 554 (3) (287 SE2d 569) (1981); *Southern R. Co. v. Gordons Transports*, 117 Ga. App. 740, 743 (3) (161 SE2d 879) (1968). Rather than clarifying the issue for the jury, the juxtaposition of internally inconsistent and mutually incompatible instructions on the issue of fraudulent intent could have misled and confused the jury over the elements of fraud applicable in this case. See *Clements v. Clements*, 247 Ga. 787, 789 (2) (279 SE2d 698) (1981); *Gunn v. Dept. of Transp.*, 222 Ga. App. 684, 686 (1) (476 SE2d 46) (1996).

New Freedom further argues that the improper jury instruction was harmless based on our decision in *Stanford v. Otto Niederer & Sons, Inc.*, 178 Ga. App. 56, 58 (2) (341 SE2d 892) (1986). In that case, we concluded that the trial court's erroneous charge on constructive fraud was harmless, since the plaintiff's only contention was that the defendant had committed actual fraud. See id. In contrast, in the present case, it is unclear from the record — which does not include a copy of the pretrial order or of opening and closing arguments —

whether New Freedom's only contention was that Brochstein committed actual fraud. Furthermore, Brochstein testified at trial that he did not know about or participate in the mortgage fraud scam, but the erroneous instruction may have misled the jury into believing that even if it believed Brochstein, it could find that he committed fraud and thus find in favor of New Freedom on its indemnification claim. As such, "the erroneous instruction did not merely draw the jurors away from the true issues in dispute, but actually authorized them to return a verdict in favor of [New Freedom] based on a legally invalid theory of recovery." *Hathaway v. Bishop*, 214 Ga. App. 870, 873 (3) (449 SE2d 318) (1994).

Finally, we note that although New Freedom also attempted to prove that it was entitled to indemnification under the CPL based on Brochstein's failure to follow the written closing instructions, it is impossible to determine whether the jury based its verdict in whole or in part on that alternative ground, as no special verdict form was requested or submitted to the jury on this issue. Under these circumstances, we must conclude that Lawyers Title is entitled to a new trial. See *Lee v. Mercedes-Benz USA*, 276 Ga. App. 28, 30 (2) (622 SE2d 361) (2005). See also *Valdez v. Power Indus. Consultants*, 215 Ga. App. 444, 446 (1) (451 SE2d 87) (1994) ("A charge unauthorized by the evidence, which injects into the case issues not made by the pleadings or evidence, is presumed to be harmful to the losing party, and such a charge is grounds for new trial unless it is apparent that the jury could not have been misled by it.").

2. We will address Lawyers Title's remaining enumerations of error because they are likely to recur during the retrial of the case. In this respect, Lawyers Title argues that the trial court's instructions on causation were erroneous and that the court instead should have given Lawyers Title's proposed instructions on proximate cause and causation. We disagree.

Lawyers Title requested that the trial court give its proposed "Proximate Causation" charge, which read:

> Under the terms of the closing protection letter, the Defendant is required to indemnify Plaintiff for actual loss arising out of the closing attorney's: 1) failure to comply with Plaintiff's written closing instructions; or 2) fraud or dishonesty in handling Plaintiff's funds or documents in connection with such closings.
>
> In order to find against the Defendant, you must find that Plaintiff's loss was proximately caused by actions of the

closing attorney that were protected under the closing protection letter.

Proximate cause is that which, in the natural and continuous sequence, unbroken by other causes, produces an event and without which the event would not have occurred. Proximate cause is that which is nearest in the order of responsible causes, as distinguished from remote, that which stands last in causation, not necessary in time or place, but in causal relation.

Lawyers Title also proposed the following "Causation" charge:

Under the terms of the closing protection letter, the Defendant is required to indemnify Plaintiff for actual loss arising out of the closing attorney's: 1) failure to comply with Plaintiff's written closing instructions; or 2) fraud or dishonesty in handling Plaintiff's funds or documents in connection with such closings.

In order to find against the Defendant, you must find that Plaintiff's damages originated from, had their origin in, grew out of or flowed from actions of the closing attorney that were protected under the closing protection letter.

The trial court declined to give Lawyers Title's proposed charges and instead gave two related jury instructions on causation entitled "Causation; Arising Out Of" and "Causation; Plaintiff's Acts":

Causation; Arising Out Of. Plaintiff in this action asserts that it incurred a loss in connection with the closing of its property due to a failure to comply with plaintiff's closing instructions or the fraud or dishonesty of the issuing agent, Michael Brochstein, and his law firm, Brochstein, Bantley & Babcock, P.C.

In order to determine if the defendant's obligation to indemnify under the closing protection letter applies in this case, you, the jury, must first determine whether or not the loss incurred by the plaintiff, quote, arises out of, quote, these fraudulent or dishonest acts or failure to follow closing instructions.

Arising out of, in quotes, includes almost any causal connection or relationship. *If a claim or loss is even partly*

*attributable to the failure to follow closing instructions or fraud or dishonesty of the issuing agent, then the defendant's obligation to indemnify under the closing protection letter would apply — would arise.*

Causation; Plaintiff's Acts. In determining whether or not the defendant is obligated to indemnify the plaintiff, you must also consider plaintiff's actions in the closing. A party is not obligated to indemnify another for a loss which arises *solely* from the other's own negligence.

*In other words, the resolution of defendant's obligation to indemnify under the closing protection letter does not turn on whether defendant and plaintiff were also negligent. Instead, it hinges on whether the loss arises solely out of the plaintiff's exclusive negligence. Otherwise, the defendant's obligation to indemnify under the contract still exists.*

(Emphasis supplied.)

Lawyers Title contends that the trial court's jury instructions misstated the applicable causation standard in indemnification clause cases by providing that Lawyers Title was obligated to fully indemnify New Freedom even if New Freedom was partially at fault for the losses it incurred. In this regard, Lawyers Title argues that it was not required to indemnify New Freedom for New Freedom's own partial negligence because the CPL did not explicitly state as much. Lawyers Title further argues that the trial court's charge is in conflict with the tort principles of proximate cause, contributory negligence, and comparative negligence, which Lawyers Title claims should apply in this case. Finally, Lawyers Title contends that the trial court should have instead given its proposed instructions on proximate cause and causation.

We are unpersuaded. As noted, the CPL required Lawyers Title to reimburse New Freedom for actual loss incurred by New Freedom "when such loss arises out of[ ] [the] [f]ailure of [Brochstein] to comply with [New Freedom's] written closing instructions . . . or [the] [f]raud or dishonesty of [Brochstein]." Under Georgia law, unless an agreement for indemnification explicitly states that the negligence of the indemnitee is covered, the agreement will not be interpreted as a promise to save the indemnitee from liability resulting strictly and exclusively from its own negligence. See *Park Pride Atlanta v. City of Atlanta*, 246 Ga. App. 689, 690-691 (1) (541 SE2d 687) (2000). Significantly,

> [h]owever, although language in an agreement may not be sufficiently explicit to indemnify the indemnitee against liability *resulting strictly from its own negligence alone*, such less than explicit language may be sufficient to require indemnification for damages *resulting from the combination of the indemnitee's negligence and the indemnitor's negligence.*

(Citations omitted; emphasis supplied.) *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 251 Ga. App. 881, 887 (2) (555 SE2d 188) (2001), rev'd on other grounds, 275 Ga. 805 (573 SE2d 31) (2002). See also *George R. Lane & Assoc. v. Thomasson*, 156 Ga. App. 313, 315 (274 SE2d 708) (1980); *Ga. State Tel. Co. v. Scarboro*, 148 Ga. App. 390, 391-392 (2) (251 SE2d 309) (1978).

Applying this principle, this Court has indicated that where, as here, an indemnification clause requires indemnification of losses that "arise out of" certain specified events but does not explicitly mention the indemnitee's negligence, the clause still requires full indemnification although the indemnitee's negligence may have partially caused the loss. See *Ga. State Tel. Co.*, 148 Ga. App. at 391-392 (2); *Peacock Constr. Co. v. Montgomery Elevator Co.*, 121 Ga. App. 711, 713-714 (3) (175 SE2d 116) (1970). As such, even though the CPL did not explicitly mention coverage for the negligence of New Freedom, Lawyers Title was required to indemnify New Freedom even if the loss was partially caused by New Freedom's own negligence.

Lawyers Title also is misguided in its argument that the trial court's causation instructions were inconsistent with the tort principle of proximate cause. Under Georgia law, where a contract provides that a loss must "arise out of" a specified act, it "does not mean proximate cause in the strict legal sense" but instead encompasses "almost any causal connection or relationship." *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562, 563-564 (1) (236 SE2d 550) (1977). See also *Interface Group-Nevada v. Freeman Decorating Co.*, 222 Ga. App. 44, 45-46 (1) (473 SE2d 573) (1996). Indeed, nothing more than a "slight causal connection" is required to show that a loss "arose out of" a specified act set forth in a contract. *Abercrombie v. Ga. Farm &c. Ins. Co.*, 216 Ga. App. 602, 604 (454 SE2d 813) (1995). As long as the claim or loss at issue is shown to be "partly attributable" to the specified act in the contract, the contractual obligation to pay the claim or loss arises. *Interface Group-Nevada*, 222 Ga. App. at 45-46 (1). Accordingly, the tort principle of proximate cause did not apply in this case.

Likewise misplaced is Lawyers Title's argument that the trial court's causation instructions conflicted with the tort principles of contributory and comparative negligence.

As a matter of contributory negligence, it is the rule in this state that, if the plaintiff, in the exercise of ordinary care, could have avoided the accident, he is denied recovery. However, in all other cases, Georgia law's comparative-negligence rule is that if the plaintiff's negligence was less than the defendant's, the plaintiff is not denied recovery although his damages shall be diminished by the jury in proportion to the degree of fault attributable to him.

(Citation omitted.) *Daniel v. Smith*, 266 Ga. App. 637, 641-642 (4) (597 SE2d 432) (2004). As an initial matter, principles of contributory and comparative negligence generally have no application in contract disputes. See *Deloitte, Haskins & Sells v. Green*, 198 Ga. App. 849, 852-853 (3) (403 SE2d 818) (1991). In any event, the contributory negligence principle that "if the plaintiff, in the exercise of ordinary care, could have avoided the accident, he is denied recovery" was substantially covered by the trial court's instruction that New Freedom could not recover if its sole negligence caused its loss. In turn, the comparative negligence principle allowing for a proportional reduction in a plaintiff's damages has no application in this case, since, as explained above, Lawyers Title was required under Georgia indemnity law to *fully* reimburse New Freedom even if the loss was partly attributable to New Freedom's own negligence. See *Interface Group-Nevada*, 222 Ga. App. at 45-46 (1).

Lastly, we reject Lawyers Title's assertion that the trial court erred by failing to give its proposed jury instructions on proximate cause and causation. Lawyers Title's proximate cause instruction was inapposite for the reasons discussed above. And, the trial court was not required to give Lawyers Title's proposed causation instruction, since it provided an incomplete statement of the causation principles applicable in this case. See *Volkswagen of America v. Gentry*, 254 Ga. App. 888, 896 (9) (a) (564 SE2d 733) (2002).

For these reasons, the trial court did not err in giving its jury instructions entitled "Causation; Arising Out Of" and "Causation; Plaintiff's Acts." Nor did the court err in declining to charge the jury on Lawyers Title's proposed instructions on proximate cause and causation.

3. Lawyers Title next argues that the trial court's instruction on confidential relationships was improper. Again, we disagree.

The trial court charged the following:

I'm now going to charge you on confidential relationship.

Any relationship shall be deemed confidential whether created by law or as a result of contracts where one party is

so situated as to exercise a controlling influence over the will, conduct, and interest of another or whether — where from a similar relationship of mutual confidence the law requires the utmost good faith.

A lawyer's representation of his client creates a fiduciary duty or confidential relationship between them.

The party asserting the existence of a fiduciary or confidential relationship bears the burden of establishing its existence. The existence of a confidential relationship lessens the plaintiff's obligation to discover the fraud and also heightens the duty of the attorney to disclose what should be revealed.

Lawyers Title argues that the trial court's instruction was inappropriate in this case, since this was not a legal malpractice action. This argument is without merit. The nature of the relationship between lawyer and client clearly was relevant in this case, since New Freedom was Brochstein's client, Brochstein was alleged to have committed fraud against his client in carrying out the closing, and his alleged acts of fraud against his client formed the basis for New Freedom's indemnification claim against Lawyers Title.

Lawyers Title also argues that the instruction improperly lessened New Freedom's burden in establishing fraudulent intent by stating that "[t]he existence of a confidential relationship lessens the plaintiff's obligation to discover the fraud and also heightens the duty of the attorney to disclose what should be revealed." But, the instruction does not go to the issue of intent. Rather, read in context, the instruction addresses the issue of justifiable reliance, an essential element of fraud that must be proven separate and apart from the other elements, and about which the trial court also instructed the jury in this case. See *Middleton v. Troy Young Realty*, 257 Ga. App. 771, 773 (b) (572 SE2d 334) (2002) ("Absent a fiduciary or confidential relationship with the defendant, the plaintiff must exercise due diligence before relying upon the representations or silence of another."); *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 359 (4) (518 SE2d 154) (1999) (setting forth the elements of fraud). In this respect, the trial court's charge properly instructed the jury that it could find that New Freedom had a lighter burden in establishing its reasonable reliance on any fraudulent disclosure or nondisclosure by Brochstein, since Brochstein was New Freedom's attorney. See *Middleton*, 257 Ga. App. at 773 (b); *Walsh v. Campbell*, 130 Ga. App. 194, 198 (202 SE2d 657) (1973) ("When a confidential relationship exists

between the parties, a greater degree of reliance and a lesser degree of diligence in one's behalf are required of a plaintiff.").

4. Finally, Lawyers Title claims that the trial court erred in partially granting New Freedom's motion in limine and thereby foreclosing Lawyers Title from arguing or introducing evidence that the loss was caused *in part* by the negligence of New Freedom or other third parties. We do not agree. As previously noted, the concept of comparative fault did not apply in this case. Instead, given the language of the CPL, Lawyers Title was required to fully indemnify New Freedom even if the loss was partly attributable to the negligence of New Freedom or some third party not covered under the CPL; Lawyers Title could avoid indemnifying New Freedom only if the loss was the result of New Freedom's *sole* negligence. See *Interface Group-Nevada*, 222 Ga. App. at 45-46 (1); *Ga. State Tel. Co.*, 148 Ga. App. at 391-392 (2); *Peacock Constr. Co.*, 121 Ga. App. at 713-714 (3). See also *Nat. Gypsum of Ga. v. Ploof Carriers Corp.*, 266 Ga. App. 565, 569 (2) (597 SE2d 597) (2004). As such, evidence of whether the loss relating to the Goode loan was the result of the partial negligence of New Freedom or some third party simply was not relevant to the outcome in this case, and, therefore, was properly excluded. In contrast, Lawyers Title was permitted by the trial court and in fact did introduce evidence attempting to show that the loss was *solely* the result of New Freedom's negligence. The trial court thus did not abuse its discretion in partially granting New Freedom's motion in limine.

*Judgment reversed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 1, 2007 —
RECONSIDERATION DENIED APRIL 12, 2007 — ▮▮▮▮▮▮▮▮

*Nelson, Mullins, Riley & Scarborough, Kenneth L. Millwood, Jeffrey L. Mapen*, for appellant.

*Smith, Gambrell & Russell, Thomas M. Barton, Aaron P. Tady*, for appellee.